[S. F. No. 561.     Department One.—August 21, 1897.]

SEPTIMUS DE GREAYER, AS GUARDIAN, ETC., PETITIONER, *v.* SUPERIOR COURT OF THE CITY AND COUNTY OF SAN FRANCISCO, RESPONDENT.

GUARDIAN AND WARD — CUSTODY OF ESTATE OF WARD — TRANSFER BY EXECUTOR—BANK DEPOSIT—VOID ORDER OF COURT LIMITING GUARDIAN'S CONTROL—JURISDICTION—CERTIORARI.—A general guardian of the estate of a minor, equally with an administrator or executor of the estate of a deceased person, is entitled to the exclusive possession, with the general care and management, of the estate committed to his trust, which cannot be limited by any order of the court as to its custody; and where a savings bank deposit, made by an executor, is transferred upon distribution to the guardian of a minor heir, the superior court has no jurisdiction to make an order requiring the fund to remain on deposit in such bank, and that it be paid out only as authorized by the court, and such order will be annulled upon *certiorari*.

ID.—INVESTMENT OF FUNDS—CONSTRUCTION OF ORDER—RULE OF COURT— CONTROL OF COURT OVER INVESTMENT — RIGHTS OF GUARDIAN.—An order directing funds in a savings bank to remain there for safekeeping, in pursuance of a rule of the court providing for the safekeeping of the moneys of estates generally, and not referring to the subject

of investment of the funds, cannot be construed as intended as a direction for the investment of the funds, under section 1792 of the Code of Civil Procedure; nor can the court, for the purpose of investment under that section, deprive the guardian of the custody and control of the fund, or of the securities representing it.

CERTIORARI in the Supreme Court to review an order of the Superior Court of the City and County of San Francisco, Department No. 9, directing control of a bank deposit, subject to its order.  J. V. COFFEY, Judge.

The facts are stated in the opinion of the court.

*Alex G. Eells,* for Petitioner.

The order appealed from was in excess of the jurisdiction of the court.  (*In re Welch's Estate,* 110 Cal. 605.)  There is no material difference between the right of a guardian to the control and management of the estate of his ward and the right of an administrator or executor to the control and management of the estate of a deceased person.  (Civ. Code, sec. 249; Code Civ. Proc., secs. 1753, 1754, 1768–70.)  The application for an order directing an investment is discretionary with the executor, it being merely a matter of his risk, if he does not apply for the order.  (*Guardianship of Cardwell,* 55 Cal. 137; *Moulton* v. *Holmes,* 57 Cal. 337; *Racouillat* v. *Requena,* 36 Cal. 651.)  *Certiorari* is the proper remedy.  (*Windsor* v. *McVeigh,* 93 U. S. 274; *Ohm* v. *Superior Court,* 85 Cal. 545; 20 Am. St. Rep. 275; *Henry* v. *Superior Court,* 93 Cal. 569.)

*Timothy J. Lyons,* for Respondent.

The court appointing a guardian has jurisdiction to control him, and to regulate the custody of the property of the ward.  (Civ. Code, secs. 245, 247, 251; Code Civ. Proc., secs. 1753, 1754, 1758, 1792.)  The court is the real guardian of the estate of the ward, and the guardian is an officer of the court.  (*Johnston* v. *Beattie,* 10 Clark & F. 42, 84; 2 Story's Equity Jurisprudence, secs. 1338, 1351–53, 1356–61; 2 Pomeroy's Equity Juris-

prudence, secs. 1305, 1308–10; *Fox* v. *Minor*, 32 Cal. 111; 91 Am. Dec. 566; *O'Shea* v. *Wilkinson*, 95 Cal. 454, 456; *Guardianship of Cardwell*, 55 Cal. 137, 141.)

VAN FLEET, J.—*Certiorari* to review an order of the superior court of the city and county of San Francisco, Department 9.

Petitioner is, by will of the father and appointment of the court, the general guardian of the person and estate of Harry Gardiner de Greayer, a minor, the estate being in process of administration in said superior court. Belonging to the estate is a certain large sum of money distributed to the ward from the estate of his father, which, at the time of distribution, was on deposit by petitioner, in his capacity as executor of the will of the father, in the California Safe Deposit and Trust Company. Upon the distribution of the fund petitioner was required to and gave an additional bond as guardian in double the amount of the fund, and an order was then made that said money be transferred on the books of the safe deposit company to petitioner's account as guardian; but thereupon said court, of its own motion, and without other circumstance, made a further order that the said moneys "be held by said California Safe Deposit and Trust Company, subject to the order of this [said superior] court, and be paid out only as authorized by this court."

It is contended by petitioner that this last order constituted an infringement upon his rights as guardian, which was beyond the power of the court, and that the order is void.

It is obvious at a glance that the effect of the order is to deny to and deprive petitioner, as guardian, of the possession and control of such fund, and, to that extent, of the possession and control of the estate of his ward. That the law does not authorize such an interference with the possession and control of one standing in the relation of petitioner to the fund has, we think, been expressly determined in the very

recent case of *In re Welch*, 110 Cal. 605, 608, where, in considering an order of precisely similar import made in the estate of a deceased person, the court, speaking through Mr. Justice Temple, says: "I know of no law which authorizes a probate judge to direct an administrator where and how he shall keep the assets of an estate, and surely there ought to be no such law. The administrator is liable for their safety on his bond. If the court could lawfully take charge of them it would deprive interested parties of this security. If goods are lost, it may be a question whether they have been properly cared for. If they have been placed where the judge has directed, and then lost, he will have prejudiced the case before the trial. Administrators cannot be deprived of the actual custody of the assets of the estate by such an order."

Respondent expresses doubts as to the correctness of what is there said, even as applied to the office of administrator, but contends that in any event it has no bearing here because of "the vast difference at the common law between the functions of an administrator and those of a guardian."

But we are pointed to no essential difference in the nature of the trust, either at common law or under our statute, affecting the question here involved, or which would render impertinent the considerations suggested in *In re Welch, supra.* Whatever the differences in his rights and duties in other respects, a general guardian at the common law, equally with an administrator or executor, was entitled to the exclusive possession, with the general care and management of the estate commited to his charge. (Woerner's American Law of Guardianship, secs. 53, 55, 56, 61, 62; *Lee* v. *Lee*, 55 Ala. 590.) And, indeed, in many other, if not most, respects there has always been great similarity between the powers and duties of a guardian in respect of the property of his ward, and an executor or administrator in the management of the estate of a deceased person. "Both classes of functionaries," says Mr. Woerner, "are

treated in law in many respects like trustees holding a legal but not beneficial title to the property intrusted to their custody. Text writers and courts find it convenient to include executors and administrators in discussing the powers, rights, duties, and liabilities of trustees; and guardians, notably guardians in socage, and testamentary guardians, were early recognized at common law and under the statute of Charles II as trustees, with not a bare authority, but an actual interest in their ward's estate." (American Law of Guardianship, sec. 53.)

And what was true in those respects at the common law is not less true under our statute. In fact, by the express terms of the statute, the guardian is given the possession, care, and management of the estate of his ward. (Civ. Code, secs. 236, 247, 249; Code Civ. Proc., secs. 1753, 1754, 1769, 1770.)

And the powers there given and the duties imposed are such as in their essential nature are wholly at variance with the existence of the right in the court to take the custody and management of the estate out of the hands of the guardian into its own. Under these provisions, as it was at the common law, it is the guardian, and not the court, who is made responsible for the proper administration of the trust. He it is to whose custody the property of the ward is intrusted, and to whom the law and the ward alike look for its safe return. In the performance of his duties he is, it is true, in certain respects under the control and supervision of the court appointing him; but this right of supervision does not, under our code, nor did it at the common law, carry the power to interfere in any such manner with the custody and general management of the property of the ward—except, of course, for conduct authorizing suspension or removal.

In *Lord* v. *Hough*, 37 Cal. 657, 664, it is said, in discussing this power of the court, that, "While the court of chancery has the control and superintendency of all guardians, however appointed, yet it can no more inter-

pose in matters of guardianship without cause, than it can interpose without cause in other matters which are within its jurisdiction.   Chancery will not interfere a_d remove a guardian who has been legally appointed, unless for misbehavior.   The guardian appointed by either the common law or statute has a legal right to the trust, of which he cannot be deprived except for reasons in equity.   The discretion of the chancellor, of which mention is frequently made in connection with his power of supervision and removal of guardians, is not an arbitrary or capricious, but a judicial, discretion, to be exercised, not in total disregard, but with due regard to all the legal rights of all concerned." (See, also, *Lincoln* v. *Alexander*, 52 Cal. 482; 28 Am. Rep. 639.)

Indeed, the right of custody and control of the property is even more essential to the full and proper discharge of a guardian's trust than to that of an administrator or executor, since the former is charged not alone with the safekeeping of the property of his ward, but with its judicious and proper investment.   And it is primarily to his discretion, rather than that of the court, that this most important duty is committed—a duty to be performed under the direction and control of the court, but, after all, a duty confided by the law to the guardian, who is made responsible for its faithful performance.   (*Estate of Cardwell*, 55 Cal. 136, 141; Woerner's American Law of Guardianship, sec. 63.)

It is quite apparent that, if the court can by such an order tie up the funds of an estate and deprive the guardian of its control, the latter may be thereby prevented from fulfilling one of the primary purposes of his trust.   And in such an instance the ward might be left without redress for any loss resulting, since it is doubtful if the guardian could be held responsible for failing to perform a duty from which he was restrained by order of the court.   (*Estate of Welch, supra.*)

While respondent does not expressly claim that the order in question was made or intended as a direction

for the " investment " of the fund, he cites in support
of the order the provisions of the code authorizing
the court to direct and supervise the investment of
the trust property, and ·particularly section 1792 of the
Code of Civil Procedure.   That section provides: "The
court, on the application of the guardian or any person
interested in the estate of any ward, after such notice
to persons interested therein as the court shall direct,
may authorize and require the guardian to invest the
proceeds of sales, and any other of his ward's money
in his hands, in real estate, or in any other manner
most to the interest of all concerned therein, and the
court may make such other orders and give such di-
rections as are needful for the management, investment,
and disposition of the estate and effects as circumstan-
ces require."

In the first place, the recitals of the order negative
the idea that it was intended as a direction for the in-
vestment of the money in pursuance of the authority
given by the above section, since it states on its face
that it is made in pursuance of a general rule thereto-·
fore adopted by the court providing for "the safekeep-
ing " of the moneys of estates generally, and makes no
reference to the subject of investment.

In the next place, if intended as a compliance with
that section, it clearly transcends the power there given.
Whether that provision contemplates an order for the
investment of funds without notice to or application
first made therefor by the guardian or other person in-
terested in the estate, or whether under any circum-
stances it would authorize a direction for the deposit or
keeping of the funds in the hands of an institution or
individual specially chosen and designated by the
court without the consent of the guardian, are questions
which need not be here decided; for certain it is that
the court cannot, for the purpose of investment more
than another, deprive the guardian of the custody and
control of the fund or the securities representing it.  If
money of the estate be invested, the guardian is still

entitled to its general care and custody, and that of the notes, bonds, mortgages, bank-books, or other security evidencing such investment, with the right and duty to preserve them, and to take such proper and necessary steps at any time to protect the interests of the ward therein as circumstances may demand. The order in question has the effect to deprive the guardian of this right, and to practically place the custody and control of the fund in the hands of the court exclusive of the guardian. Such an order is without doubt in excess of the power of the court, and void.

The order is annulled.

HARRISON, J., and BEATTY, C. J., concurred.