[L. A. No. 15911.   In Bank.—October 6, 1937.]

In the Matter of the Estate of MARIA L. HARRIS, Deceased. A. E. HARRIS, Appellant, v. DONALD LARTER, as Administrator, etc., et al., Respondents.

W. M. Greathouse, C. E. McDowell, Head, Wellington & Jacobs and Otto A. Jacobs for Appellant.

R. Y. Williams and Charles D. Swanner for Respondents.

CURTIS, J.—This is an appeal from a decree of distribution distributing to the respondents, the two brothers and a sister of Maria L. Harris, the entire estate of said decedent who died intestate without issue. The appellant is a brother of Richard T. Harris, the previously deceased husband of Maria L. Harris, who in behalf of himself, other brothers, sisters, nieces, nephews and the wives of deceased brothers, seeks to share in the deceased wife's estate, appraised at $74,246.98.

Objection to the distribution of all of the property in the estate of Marie L. Harris, hereinafter referred to as decedent, to her relatives, was made by appellant upon the ground that all of the property inventoried in the estate of decedent, with the exception of two small parcels, came to the decedent by an *inter vivos* gift to her from her husband of his separate property, and that these two parcels came to her by

operation of law upon the death of her prior deceased husband by virtue of the fact that they had been the community property of said spouses. Appellant claims by virtue of sections 228 and 229 of the Probate Code to be entitled to have distributed to the relatives of said R. T. Harris, designated in said code sections, all of the separate property of said previously deceased spouse remaining in the estate of decedent which came to decedent by gift from her husband during his lifetime, and one-half of the property remaining in her estate which had been the community property of said spouses.

In order to understand the arguments advanced relative to the applicability of said code sections to the property inventoried in the estate of decedent, Maria L. Harris, a brief *résumé* of the proceedings taken in the probate of the estate of R. T. Harris is necessary. Upon the death intestate and without issue of R. T. Harris in 1911, after twenty-three years of married life with Maria L. Harris, his surviving widow, as administratrix of his estate, returned in the inventory and appraisement of his estate, no personal property and only one parcel of real property valued at $5,000, which had been purchased by him a few days before his death and held in his name as sole grantee, which real property she declared to be community property. Although at the time of his death, R. T. Harris apparently owned an estate of considerable magnitude, consisting of real and personal property, with the exception of the above mentioned real property, none of it was included in the inventory of his estate. The reason for this omission was that for several years the funds of Harris and his wife had been kept in a joint tenancy bank account, and the bulk of the real property purchased by Harris during their married life was taken by him as sole grantee, and by him deeded to his wife, which deeds were recorded by her after his death. One piece of real property, included in the inventory as parcel No. 3, and known as the Home Place, which had been acquired early in their married life, had been deeded to Maria L. Harris as sole grantee by the grantor thereof, and another piece of real property had been taken in the name of R. T. Harris and Maria L Harris as joint tenants. Maria L. Harris, therefore, claimed all of the property with the exception of the $5,000 piece of real property, as her own property, and omitted it from the inventory of his estate. During the course of the probate, the parcel of real property was sold to one Crookshank for $5,000, and the whole

purchase price applied by the administratrix to the satisfaction of the debts of R. T. Harris, which came to slightly more than $5,000. Objections to the final account of said administratrix were made by Clara G. Fulsom, a sister of R. T. Harris, solely upon the ground that said administratrix had failed to account for certain *personal* property of the approximate value of $40,000, part of which consisted of shares of stock, the certificates to which had been issued to R. T. Harris, and by him endorsed and placed in the safe-deposit box in which was kept the property of both spouses. The probate court in that proceeding found that the property described in the objections was the property of Maria L. Harris, and not the property of the estate of R. T. Harris, that nothing remained in the estate to be distributed, and approved said final account. ■ Upon appeal, this court after stating that said spouses at the time of their marriage each had separate property and had established a joint bank account with the right of survivorship in pursuance of an agreement between them during the early years of their marriage, which provided that all property held or acquired by either or both of them during the marriage, should be held in joint ownership as joint tenants, and that they had deposited the money received from earnings, proceeds of property, and all other sources by either of them in accordance with said agreement, and that all the property in controversy had been acquired with money from this joint account, held that the property acquired with funds from this joint tenancy account, in the absence of an agreement between the parties that the character was changed, retained the character of joint property, the same as the money with which it was obtained and therefore belonged to the widow as the survivor. (*Estate of Harris,* 169 Cal. 725 [147 Pac. 967].) The court reached this conclusion upon the reasoning that as there was no statutory prohibition against the transfer of personal property by oral agreement, the agreement of the spouses to hold their property in joint tenancy operated to create a joint tenancy in the personal property acquired by them, notwithstanding the fact that the purchase price had actually been withdrawn from the joint tenancy account and that, as to certain of the personal property, the title on its face stood in the name of only one of the joint tenants. By this decision the court laid down the rule that joint tenancy property may be traced into personal

property and the personal property so acquired with joint tenancy funds will be deemed to be held in joint tenancy, in the absence of an agreement to the contrary, regardless of the circumstance that title to said acquired property may be held by only one of the joint tenants. Although this conclusion that where personal property is purchased with joint tenancy funds and title is placed in the name of one of the cotenants, the joint tenancy is not terminated, despite the destruction of one of the necessary unities, namely, unity of title, appears to be contrary to the common law rule, nevertheless, this exception to the common law rule, which had its origin in *Estate of Harris, supra,* has become the recognized and established law of this state, and has been followed in numerous recent decisions. (*Lagar* v. *Erickson,* 13 Cal. App. (2d) 365 [56 Pac. (2d) 1287]; *Estate of McCoin,* 9 Cal. App. (2d) 480 [50 Pac. (2d) 114]; *In re Kesler,* 217 Cal. 32 [17 Pac. (2d) 117]; *Young* v. *Young,* 126 Cal. App. 306 [14 Pac. (2d) 580].) It should be noted here, perhaps, that the decision upon that appeal only dealt with the personal property alleged to have been omitted from the inventory of the estate of R. T. Harris, and did not purport to deal with any real property. This is necessarily so for the reason that the sole objection made in said proceeding was that the administratrix had failed to account for certain personal property. As the administratrix by deeds held title to all of the real property of the spouses, and the relatives of R. T. Harris apparently admitted the validity of said deeds, no reason existed for any question to arise with reference to real property. It should also perhaps be noted that all of the decisions which have followed the rule laid down in *Estate of Harris, supra,* are decisions which affect personal property only.

The property involved in this controversy has been listed by appellant into six different categories according to their nature and origin, and for convenience of discussion, we shall use this classification. First kind: Parcels of real property which were purchased by deceased husband, R. T. Harris, with funds from the joint bank account of himself and Maria L. Harris, his wife, title to which real property was taken from time to time solely in his name and deeds to which property were executed by R. T. Harris in favor of his wife, Maria L. Harris, within from one to two months after each purchase respectively and which deeds were recorded at

one time, about a month after his death. Second kind: The sum of $23,000, being the proceeds of a sale of similar real property made by Maria L. Harris after the death of R. T. Harris. Third kind: A parcel of real property acquired in the early years of the married life of the spouses, title to which was taken, and has always continued in the name of the wife. Fourth kind: A parcel of real property (being the whole of lot 4 and an undivided one-half of lots 5 and 12 in block 12 of the Pacific Electric Subdivision of the Ross Tract, referred to in parcel 4 of the inventory and appraisement of Maria L. Harris's estate) claimed by appellant to have been purchased by R. T. Harris before any joint bank account was created, and which has at all times stood of record in his name, and which was omitted from the inventory of the estate of R. T. Harris, possibly through inadvertence. Fifth kind: A parcel of real property purchased by R. T. Harris with funds from the joint bank account a few days before his death and probated as community property by his wife. Sixth kind: Personal property held in joint tenancy by R. T. Harris and Maria L. Harris before the death of R. T. Harris, and real and personal property acquired by Maria L. Harris after the death of R. T. Harris from the proceeds of such joint tenancy personal property.

The court rejected the claim of appellant to have any part of the estate of Maria L. Harris distributed to relatives of R. T. Harris, specified in sections 228 and 229 of the Probate Code, and made its decree distributing the entire estate of Maria L. Harris in equal shares to the respondents, the two brothers and sister of Maria L. Harris, deceased. In its decree of distribution the court found: "The whole of said estate was the separate property of said Maria L. Harris, deceased, and did not come to her by gift from R. T. Harris, her deceased husband, but said decedent became the owner of the whole of said property by right of survivorship, under an agreement entered into between said decedent and R. T. Harris, her deceased husband, in the early years of their married life, whereby it was agreed that all property which either owned as separate property, or which they had or might acquire during their married life, as community property, should be held in joint tenancy with the right of survivorship to the one surviving. That the said R. T. Harris predeceased said Maria L. Harris, and all his interest in said property so held in joint tenancy under said agreement

terminated, and Maria L. Harris became the sole owner by right of survivorship.''

We are of the opinion that the probate court was in error in making the finding just quoted, and upon such finding distributing the entire estate of Maria L. Harris to the respondents. ▮ It is undisputed that the descent of property is governed by the law in force at the time of the death of the person whose property is to be distributed. (*Estate of Putnam,* 219 Cal. 608 [28 Pac. (2d) 27].) The provisions of section 228 and section 229 of the Probate Code, as amended in 1931, therefore govern and control the distribution of the property in the estate of Maria L. Harris, who died July 2, 1933. Prior to the 1931 amendment, whereby the word, ''gift'' was added to said section 229 of the Probate Code, the relatives of a predeceased spouse were entitled to inherit in the estate of the surviving spouse, such property as had been the separate property of the predeceased spouse and had come to the decedent from such spouse by descent, devise or bequest. In 1931, the code commission, as they said, ''in order to make the section logically complete'', added the word, ''gift''. ▮ The result was that upon the death of the surviving spouse the relatives of a predeceased spouse became entitled to inherit under said provisions such property as had been the separate property of said predeceased spouse and had come to said surviving spouse by *inter vivos* gift from said predeceased spouse. Said section after amendment read as follows: ''If the decedent leave no issue, and the estate or any portion thereof was separate property of a previously predeceased spouse, and came to decedent from such spouse by *gift,* descent, devise or bequest, such property goes in equal shares to the children of the deceased spouse and to their descendants by right of representation, and if none, then to the parents of the deceased spouse in equal shares, or if either is dead to the survivor, or if both are dead, in equal shares to the brothers and sisters of the deceased spouse and to their descendants by right of representation.'' ▮ In view of the settled law of this state that the creation of a joint bank account is a gift *inter vivos* (*Bell* v. *Moloney,* 175 Cal. 366 [165 Pac. 917]; *George* v. *Daly,* 83 Cal. App. 684 [257 Pac. 171]), and that the same rule applies to real estate (*Tilden* v. *Tilden,* 81 Cal. App. 535, 542 [254 Pac. 310]), we see no escape from the conclusion that the insertion of the term,

"gift" in said section 229 conferred upon the relatives of the predeceased spouse, specified in said section, the right to take as heirs of the surviving spouse such separate property as by the creation of a joint tenancy ownership therein had been given by the predeceased spouse to the surviving spouse. While for the sake of simplicity in the administration of the estates of such decedents, it might seem desirable to interpret the word, "gift" as only referring to outright gifts of the entire interest in separate property, and to hold it inapplicable to the creation of joint tenancy interests, in view of the hereinbefore cited cases, such an interpretation is not permissible.

Appellant insists that the decision in *Estate of Harris, supra,* only went so far as to hold that the personal property involved was held in joint tenancy, and did not determine whether or not the property from which said joint tenancy was created was the separate property of R. T. Harris and was an *inter vivos* gift by R. T. Harris to his wife, and that if he can establish the fact that it was the separate property of R. T. Harris and that the creation of a joint tenancy ownership with his wife constituted a gift by R. T. Harris to her, he and the other relatives of R. T. Harris are entitled to succeed to the whole thereof under section 229 of the Probate Code. However, the court in *Estate of Harris, supra,* did determine, as shown on the face of its opinion, that both spouses owned separate property and entered into a binding agreement that each would contribute all the property held by them or acquired during marriage in joint tenancy. It cannot be said, we think, that if a husband and wife enter into a mutual binding agreement whereby each contributes his and her separate property to a joint tenancy account, that the converting of said separate property of each of the spouses into a joint tenancy ownership constituted a gift by each to the other of his or her separate property.

Such conclusion does not, however, entirely negative appellant's right to inherit the real property which was bought by R. T. Harris with the funds from this joint tenancy account (classified as the first kind of property) nor the right of the relatives of R. T. Harris to inherit the proceeds of a sale of similar real property which sale was made by Maria L. Harris, after the death of R. T. Harris. As previously indicated, the real property which was purchased by R. T.

Harris with the joint tenancy funds was shortly after its purchase deeded by him to his wife, and these deeds were recorded after his death. Upon the creation of the joint tenancy ownership, each owned their interest therein as separate property. (*Siberell* v. *Siberell,* 214 Cal. 767 [7 Pac. (2d) 1003].) If it could be said that the real property purchased with the joint tenancy funds retained the character of joint tenancy ownership by virtue of their source, R. T. Harris by deeding the property to his wife, severed the joint tenancy and terminated it. (*Hiltbrand* v. *Hiltbrand,* 13 Cal. App. (2d) 330 [56 Pac. (2d) 1292].) This gift being an *inter vivos* gift of his separate property, would be upon the death of his wife, distributable to the relatives of R. T. Harris, designated in section 229 of the Probate Code. Since she would retain her separate interest in the joint tenancy property, she would acquire only a one-half interest in said property by virtue of the deed from her husband, and the relatives of R. T. Harris would be entitled to have distributed to them a one-half of said property. (Sec. 229, Prob. Code.) However, in view of section 683 of the Civil Code defining a joint tenancy, we are of the opinion, that as to the real property herein involved, the only possible manner in which the real property purchased with joint tenancy funds could be held to have retained its joint tenancy character would be to impress a constructive trust upon said property upon the theory that R. T. Harris in withdrawing joint tenancy funds had acted in fraud of his wife's rights and for this reason should be held to hold title to the property in his own name as trustee for the joint tenancy. Under the facts of the instant case, such a view does not seem tenable. ▉ It is one of the incidents of joint tenancy that either joint tenant may convey his separate estate by way of gift or otherwise without the approval or consent of his other joint tenant, and upon such conveyance the joint tenancy is terminated. (*Delanoy* v. *Delanoy,* 216 Cal. 23 [13 Pac. (2d) 513].) This incident of joint tenancy ownership must be presumed to have been in the contemplation of the parties at the time of the creation of the joint tenancy ownership. Moreover, in view of the fact that there is not the slightest intimation in the record that the relations of the married couple were not most harmonious, and in view of the testimony of Maria L. Harris in the H. T. Harris probate matter that she was familiar with her husband's business and that whenever there

was any purchase of property she and Mr. Harris talked the matter over and jointly concluded whether or not they would buy the property, we think a finding of fraud on the part of the husband would be entirely unjustified. This conclusion is strongly fortified by the fact that after the purchase of each parcel of real property in his own name he executed deeds to his wife.

We are not willing to subscribe to the theory, in the absence of proof, that it was the agreement of the cotenants, husband and wife, that the husband in purchasing the real property used only his half interest in the joint tenancy funds and took all the real property as his own separate property. Such a holding would in other cases open wide the door of actual fraud to unscrupulous persons and place the burden of proving the retention of an interest in joint tenancy property upon the passive joint tenant rather than upon the person actively transferring the title. This would be most inequitable and work an undue hardship upon the innocent co-owner.

We are of the opinion that the same result flows from the severance by one spouse of a joint tenancy ownership by the taking of property purchased with the joint tenancy funds in his or her own name, as results when one joint tenant deeds his interest in the property to a stranger. (*Delanoy* v. *Delanoy, supra.*) The owners of said property thereafter each own the same as tenants in common. It is true that the title stands in the name of the spouse severing the joint tenancy and taking title to the acquired property in his or her own name. It is elementary, however, that if the consideration for the purchase of any property is furnished by a stranger to the title, the holder of the title, by operation of law, holds the title in trust for the one who furnished the consideration. It may reasonably be concluded, therefore, that in the instant case as one-half of the purchase price of the property consisted of the undivided one-half interest of the wife in the joint tenancy funds, that the husband in taking title to said real property, took a one-half interest in his own right as separate property and a one-half interest as trustee for his wife. By this deed to her he gave to his wife his one-half of said property which, as we have seen, was, prior to the execution of said deed, his separate property. This property which he gave to his wife, his relatives are entitled to have distributed to them by virtue of the

provisions of section 229 of the Probate Code. As to the one-half of said property which he held as trustee, he conveyed this to her in fulfillment of his duty as trustee. This one-half which belonged to his wife in her own right, her heirs are entitled to inherit as her own separate property. To sum up, as to the first kind of property hereinbefore set out, consisting of parcels 9, 10, and 11, of the inventory and appraisement in the estate of Maria L. Harris, the relatives of Maria L. Harris are entitled to distribution of a one-half thereof as her separate property, and the relatives of R. T. Harris designated in section 229 of the Probate Code are entitled to have distributed to them the other one-half of said property as the separate property of her predeceased spouse which had come to her by gift from him.

The same applies to the proceeds of the sale of real property which had come to Mrs. Harris under similar circumstances and which had been sold by her in 1919. (Classified as the second kind of property.) Section 229 of the Probate Code would apply to this property only in the event that any portion of it remained in her estate upon her death as during her lifetime she had a perfect right to deal with it as she pleased as it was her own separate property. In view of the fact that it appears that during her lifetime Maria L. Harris gave large sums to churches and other institutions, it may be that the appellants will have considerable difficulty in proving that any portion thereof remained in her estate at the time of her death. Appellant relies strongly upon the case of *Stafford* v. *Martinoni*, 192 Cal. 724 [221 Pac. 919], as placing the burden of making an accounting of such funds upon the administrator of the estate of the decedent. There is language in that case to the effect that since the widow held property during her lifetime in trust ''for the benefit of his estate and heirs'', her administrator should be held to such an accounting as would disclose what portion of such property was derived from the community property of herself and husband. It is apparent that in that case the reason the widow was held to hold certain property in trust for the benefit of her husband's heirs, was that at the time of the death of her husband his relatives were entitled to share to the extent of one-half in any community property owned by the spouses not disposed of by will. Upon the death of her husband, she failed to include in her inventory, property which upon

her death was claimed by her husband's relatives to have been community property of the spouses. As to this property which should have been distributed to her husband's relatives upon the death of her husband, it is obvious that she held it as trustee for them during her lifetime, and the burden of accounting therefor should properly be upon her representative. This is not the situation here. During her lifetime, Maria L. Harris was the absolute owner in her own right of all the property which had come to her from her husband. She could give it away or will it away. It was only in the event of her dying intestate and without issue that the right of the relatives of her predeceased husband to inherit any part of the estate which had come to her from him came into existence. ▮ It has long been the rule that where the right of a person as heir depends not merely upon the fact of a certain relationship, but upon the fact of such relationship plus the fact that the property he claims as heir had formerly been either the community property of the decedent and her previously deceased spouse or else the separate property of the latter, the burden of showing such additional fact rests upon him. (*Estate of Simonton*, 183 Cal. 53 [190 Pac. 442].)

▮ In view of the fact that we hold that a joint tenancy ownership in real property cannot be created by an oral agreement by reason of the provisions of section 683 of the Civil Code, it follows that as to the third kind of property, being parcel 3 in the inventory and appraisement, which is claimed by appellant to be the separate property of R. T. Harris, which property was acquired in the early years of the married life of the spouses, title to which in 1895 was taken and has always continued to remain in the wife, and which never became a part of the joint tenancy transaction, if appellant can establish that it was the separate property of R. T. Harris, and was given by him to his wife during their marriage by deed direct to her from the grantor, the relatives of R. T. Harris are entitled to have the whole thereof distributed to them since, as to such parcel of real property, the gift would consist of the entire ownership of such property.

As to the fourth kind of property, it appears from the record that it was acquired through two separate deeds, one dated October 1, 1906, and one dated April 29, 1907. This property was omitted from the inventory of the estate of

R. T. Harris. It appears, according to the statement of appellant, that from June 28, 1905, the only bank account of the spouses was carried in the name of Mr. or Mrs. R. T. Harris, and that in 1909 the account was changed into a joint tenancy account. There seems to be no definite date fixed as to when the spouses made the agreement to hold their separate property in joint tenancy. The opinion in *Estate of Harris, supra,* merely states that it was made during the early years of their marriage. They were married on July 23, 1888. The distribution of this property will depend entirely upon its character at the time of the death of R. T. Harris, that is, whether it was his separate property, or the community property of himself and wife, or whether it was held by the spouses as tenants in common. There is no finding of the court upon this question, and the evidence is such that it cannot be determined from the record in which of these three relationships said property was held by R. T. Harris. When the trial court has determined this question in accordance with the rules above announced the property will descend and belong to the parties entitled to the same under the law of succession in force at the respective dates of the deaths of the spouses. In no event, will respondents be entitled to have distributed to them all of said property.

The fifth kind of property consisted of a parcel of real property purchased by R. T. Harris with funds from the joint bank account a few days before his death and probated as community property by his wife. Appellant at the probate hearing was not permitted to introduce evidence to prove that this parcel of real property was not in fact sold in the probate proceedings in the estate of R. T. Harris, but was only taken by Crookshank in his own name without the payment of any consideration and three years later was deeded back to Maria L. Harris. Appellant argues that in attempting to introduce such evidence he was not collaterally attacking the probate sale of the real property in the former probate proceedings. The court did not err in excluding this evidence. If the sale was irregular, it should have been attacked in an independent proceeding. If Crookshank did not pay any consideration, the administratrix probably paid the debts of the decedent out of the funds which came to her as survivor of the joint tenancy. This would be her own separate property. In *O'Connor* v. *Flynn,* 57 Cal. 293, in setting aside a sale which was illegal by reason of the fact

that it had been made to the executor of an estate, an account was ordered wherein the executor was credited with the purchase price of said property. Over twenty years have elapsed since said sale, and we do not believe that the equities of the situation could be adequately gone into in the hearing upon the petition for distribution in the estate of decedent.

As to the sixth kind of property, the probate court, with reference to the real property, found that the decedent, Maria L. Harris, acquired seven parcels of real property subsequent to the date of the death of R. T. Harris, her deceased husband, by purchase with funds from the sale of stock acquired by said decedent by right of survivorship under the joint tenancy agreement entered into between said decedent and R. T. Harris during the early years of their married life. It follows from what we have hereinbefore said that this real property, as well as the personal property held in joint tenancy by R. T. Harris and Maria L. Harris before the death of R. T. Harris, should be distributed to the respondents, the heirs of Maria L. Harris, since section 229 of the Probate Code does not confer upon the relatives of a predeceased spouse the right to inherit in the estate of decedent property which came to said decedent by right of survivorship.

Appellant also attempted to establish the fact that in 1904 an oral agreement was entered into between R. T. Harris and his wife, whereby R. T. Harris agreed to give his wife all property, and she agreed that after she had "taken a good living out of it", she would divide it equally between his relatives and her relatives. After her death two copies of wills were found which were refused probate, in which she left considerable property to churches and made some provisions for her husband's relatives as well as her own. Although appellant presents a plausible argument as to why the probate court herein should take jurisdiction to determine the issue of such an oral agreement, this question cannot be litigated in a probate court, but the remedy of a person injured by the violation of a contract to make testamentary provision for another must be pursued in a court of equity. (*Fuller* v. *Nelle*, 12 Cal. App. (2d) 576, 580 [55 Pac. (2d) 1248]; *Estate of Rolls*, 193 Cal. 594, 596 [226 Pac. 608].)

We are of the opinion that such an oral agreement if entered into in 1904 prior to the amendment requiring such an agreement to be in writing would be valid, if it could be

established. (*Staples* v. *Hawthorne,* 208 Cal. 578 [283 Pac. 67].) This is so regardless of the joint tenancy agreement between the spouses, as there is nothing inconsistent with an agreement that the husband agreed to give his wife all of his property and the wife agreed upon her death that it would be divided equally between both families and the creation of a joint tenancy ownership. The creation of a joint tenancy is a gift, and that may well have been the method adopted by the husband to fulfill the terms of such an oral agreement to give his wife all the property, if the oral agreement existed. (*Estate of Gurnsey,* 177 Cal. 211 [170 Pac. 402].) ▮▮▮ Nor is the decision in *Estate of Harris, supra, res judicata* upon this question. As the question could not possibly arise until the death of Maria L. Harris and her failure to perform the terms of such agreement, if any, this previous decision could not foreclose appellant from raising the question upon the death of Maria L. Harris.

▮▮▮ The argument is advanced by respondents that the finding, upon the will contest of the wills of Maria L. Harris, to the effect that these respondents were the sole heirs of Maria L. Harris is *res judicata* as to the relatives of R. T. Harris claiming herein as heirs of Maria L. Harris, and preclude their sharing in the estate of Maria L. Harris. The verdict in that contest could not affect the right of the relatives of R. T. Harris to take as heirs of Maria L. Harris, for the reason that the material issue in said contest was simply the validity of the two wills offered for probate. The relationship of respondents to Maria L. Harris in the will contest was an incidental matter.

The decree is affirmed as to the fifth and sixth kinds of property described and set forth herein, and is reversed as to the first, second, third and fourth kinds of property mentioned above, with directions to the trial court to take such further proceedings as may be necessary to enable it to properly distribute said four kinds of property to the parties entitled thereto in accordance with the views herein expressed.

Shenk, J., Nourse, J., *pro tem.,* Edmonds, J., Waste, C. J., and Seawell, J., concurred.

Rehearing denied.