[Civ. No. 13368. First Dist., Div. Two. July 10, 1947.]

JAMES DORAN, as Administrator, etc., Appellant, v. THE HIBERNIA SAVINGS AND LOAN SOCIETY et al., Respondents.

Cosgrove, Molinari & Tinney for Appellant.

Tobin & Tobin and Charles R. Collins for Respondents.

GOODELL, J.—Anna A. Doran died intestate on December 17, 1944, leaving as heirs at law a brother, James Doran, a niece, Bernita Leveira, and two nephews, Robert M. and Joseph R. Leveira. The decedent's brother was appointed administrator of her estate and brought this suit to quiet title to two joint tenancy savings accounts in the respondent bank. The court found that respondent Bernita Leveira was the sole owner of one account, that respondent Robert M. Leveira was the sole owner of the other, and that the estate had no interest in either. From a judgment entered on those findings the administrator appeals.

·On April 1, 1933, the first account was opened in the names of Anna A. Doran or Bernita Leveira, payable to either or the survivor. When the decedent died there was $3,609.80 therein.

On August 9, 1937, the second account was opened in the names of Anna A. Doran or Robert M. Leveira, payable to either or the survivor. At the time of the death there ·was $5,982.90 therein.

On March 24, 1943, the Superior Court, San Francisco, adjudged Anna A. Doran to be an incompetent person, and appointed the respondent Bernita Leveira guardian of her person and estate. At that time there was $2,988.25 in the first account and $6,314.96 in the second.

On June 1, 1943, the same court adjudged Anna A. Doran to be mentally ill and committed her to the State Hospital at Stockton, where she died.

It is the contention of the appellant that the adjudication of incompetency and the taking of possession of the accounts by the guardian, destroyed one of the four unities—that of possession—and thus terminated the joint tenancies.

It was stipulated that the accounts were opened in accordance with section 15a of the Bank Act, which provides that ". . . The making of the deposit in such form (joint tenancy) shall . . . be conclusive evidence, in any action or proceeding to which either such bank or the surviving depositor ·. . . may be a party, of the intention of such depositors to vest title to such deposit and the additions thereto in such survivor. . . ." (See, also, *Kennedy* v. *McMurray*, 169 Cal. 287 [146 P. 647, Ann.Cas. 1916D 515].)

The bank and the surviving depositors are parties to this action, hence the inquiry presents itself as to what there is about the appointment of a guardian that will defeat the established intention to vest title in the surviving tenant.

The reason why a guardian is needed for an incompetent person is that such person is "unable, unassisted, properly to manage and take care of . . . his property . . ." (Prob. Code, § 1460). The very definition of a guardian seems to answer the appellant's contention, for "A guardian is a person appointed to take care of the . . . property of another . . ." (Prob. Code, § 1400). If the guardian's duty is to *take care* of the ward's property it must follow that the guardian's possession is the ward's possession. At least it cannot be that the ward is dispossessed in the sense that the

unity of possession theretofore existing is destroyed. Neither the guardian's title nor possession can be in any degree adverse to the ward's (Prob. Code, § 1580, subd. 5). The guardian becomes vested merely with the legal, not the beneficial, title (*De Greayer* v. *Superior Court*, 117 Cal. 640, 644 [49 P. 983, 59 Am.St.Rep. 220]) and his possession, accordingly, is but a limited and temporary possession, as a trustee, for the benefit of the ward. As was said in the last cited case, "He it is to whose custody the property of the ward is entrusted, and to whom the law and the ward alike look for its safe return."

What was the nature and extent of the claimed dispossession in this case? The guardian left both accounts where they were. The only change was the addition of the guardian's name. Moreover, on the guardian's own motion the accounts were frozen under section 51 of the Bank Act so as to reduce the size of the bond. No interference or dominion was exercised over the accounts by Bernita Leveira save in her fiduciary capacity. Both accounts were kept virtually *in status quo*. They were inventoried by the guardian as follows:

"Moneys belonging to said Incompetent which have come to the hands of the Guardian:

"Account No. 643-263 standing in the names of Anna A. Doran or Robert M. Leveira, in The Hibernia Savings and Loan Society, in the sum of, ....................................\$6,314.96

Account No. 622-330 standing in the names of Anna A. Doran or Bernita M. Leveira, in The Hibernia Savings and Loan Society, in the sum of, .................................... 2,988.25"

It must be borne in mind that this contest was instituted after the death of one of the joint tenants and is between the administrator of the deceased tenant's estate, and the other joint tenant. It is not a contest waged during the lifetime of both. The difference just noted is discussed and the authorities cited in the case of *Wallace* v. *Riley*, 23 Cal.App.2d 654 at 662-663 [74 P.2d 800]. The cases relied on by appellant, *Abrams* v. *Nickel*, 50 Ohio App. 500 [198 N.E. 887] and *Ulmer* v. *Society for Savings*, 41 N.E.2d 578 (both in the Court of Appeals of Ohio) were contests carried on during the lives of the depositors. For this reason neither case is in point. Furthermore, the question presented on this record,

after death, as to survivorship, could not similarly arise in Ohio for there the statute (somewhat like our 15a) does not, as ours does, set up the conclusive presumption of the intention of the depositors to vest title in the survivor.

The appellant contends, further, that where one of the tenants becomes the guardian of the other and assumes control of the account "as the sole property of the guardianship estate . . . all of the joint tenancy property should be delivered to the administrator of the estate of the incompetent upon the latter's death intestate."

The guardian did not assume control "as the sole property of the guardianship estate," nor admit, as claimed by appellant, "by her proceedings in the incompetent's guardianship that the entire moneys on deposit in the two accounts constituted the sole property of the incompetent." We have already shown that the guardian scheduled these accounts in the inventory as standing in the names of Anna A. Doran or Bernita M. Leveira in one instance, and in Anna A. Doran or Robert M. Leveira in the other. The description of the accounts in the inventory would seem to be technically correct (see *Conneally* v. *San Francisco S. & L. Soc.*, 70 Cal.App. 180, 182 [232 P. 755]). There is nothing in the proceedings to indicate that respondent Bernita Leveira intended to quitclaim or abandon her joint interest in her account, and she certainly could not do so with respect to the account in which her brother was interested.

The appellant also makes the following claim, based on the Ohio case of *Ulmer* v. *Society for Savings, supra:* "We submit that a court of equity should inquire into the respective contributions of the joint tenants and, it appearing from the guardianship proceedings that the entire moneys in the two accounts represented assets of the incompetent, for that reason the whole thereof should be delivered to the administrator of her estate." The appellant had the burden of proof in this case, and the record shows no attempt to prove the origin of the two accounts or the proportionate contributions to them. Had such attempt been made the administrator doubtless would have been met with the objection that, the creation of a joint tenancy having once been established, the prior ownership of the money which went into it was "a circumstance of no importance" (see *Kennedy* v. *McMurray,* 169 Cal. 287, 293 [146 P. 647, Ann.Cas. 1916D 515]; *Conneally* v. *San Francisco S. & L. Soc.,* 70 Cal.App. 180, 182, *supra*).

 In the case of a bank account it is settled in this state that even the destruction of the unity of title does not terminate the joint tenancy. (*Estate of Harris*, 9 Cal.2d 649, 655 [72 P.2d 873] ; *Estate of Harris*, 169 Cal. 725 [147 P. 967].) In *Wallace* v. *Riley*, 23 Cal.App.2d 654, 665, *supra*, this court said, ''Contrary to the rule of the common law . . . it has become the established principle in California that if money is taken from a joint tenancy account during the joint lives of the depositors, property acquired by the money so withdrawn, or another account into which the money is traced, will retain its character as property held in joint tenancy like the original fund, unless there has been a change in the character by some agreement between the parties. This departure from the rule of the common law was first announced in *Estate of R. T. Harris*, 169 Cal. 725, 728 [147 P. 967], and in determination of questions recently arising in the estate of his widow, was reaffirmed in *Estate of Harris*, 9 Cal.2d 649 [72 P.2d 873]. See, also, *Estate of McCoin*, 9 Cal.App.2d 480, 482 [50 P.2d 114] ; *Lagar* v. *Erickson*, 13 Cal.App.2d 365, 370 [56 P.2d 1287] ; *In re Kessler*, 217 Cal. 32 [17 P.2d 117] ; *Young* v. *Young*, 126 Cal.App. 306, 312, 313 [14 P.2d 580] ; *Chamberlain* v. *Chamberlain*, 2 Cal.App.2d 684, 688 [38 P.2d 790].'' See, also, *State* v. *Gralewski's Estate*, 176 Ore. 448 [159 P.2d 211, 161 A.L.R. 66] (a case where one joint tenant was adjudged insane, but that point was not raised).

 With such a rule insuring the integrity and continuity of a joint tenancy account, *in the absence of an agreement changing its character*, it is difficult to see how the assumption of possession by the guardian, *for the purpose of taking care of the ward's property*, could sever the joint tenancies.

The judgment is affirmed.

Nourse, P. J., and Dooling, J., concurred.