[Civ. No. 19357. First Dist., Div. One. June 22, 1961.]

Guardianship of the Person and Estate of MAE WOOD, an Incompetent Person. LUCILLE M. MOSES, Appellant, v. BARBARA JEANNE BUTNER, Respondent.

William Steinberg and Abraham Berry for Appellant.

Duffy, Walton & DeDobbeleer, Jerome A. Duffy and Herbert K. Walton, Jr., for Respondent.

TOBRINER, J.—This appeal originates in a decree which disallows appellant's first and final guardian's account and orders her to pay over to the objector-respondent, and another person, some $4,503.75 as a condition to the allowance of the account. Appellant's three-pronged attack first contends that the court in rendering the order exceeded the jurisdiction of the probate court (technically the superior court sitting in probate); second, asserts that the court did not disapprove or disallow any of appellant's advances and hence should have settled the account; and, third, proclaims appellant acted in good faith, managed the estate frugally and applied the income to the ward's support. Appellant's objection to the court's jurisdiction succumbs to our analysis of the facts and the applicable law; her other two contentions do not withstand the court's findings of fact and conclusions of law, which find full support in the record.

On August 5, 1958, appellant filed a petition for the declaration of her mother, Mae Wood, as an incompetent and for petitioner's appointment as guardian of the mother's person and estate. Appellant did not notify her daughter, Barbara Jeanne Butner of this petition; indeed, appellant alleged that she was her mother's only relative. At the hearing before Judge Sims of the Superior Court of the County of Marin, appellant represented that she and her mother held a joint tenancy interest in a cottage located at 210 Bonita Street, Sausalito, and that she needed approximately $3,600 to place the property in suitable condition so that it might be rented and produce income for her mother's support. Judge Sims appointed appellant guardian and authorized her to withdraw a maximum of $4,000 from a savings account, primarily for the repair of the Sausalito cottage.

On the date of the filing of the petition, Mae Wood possessed interests in only two savings accounts: an American

Trust Company account, totaling $5,891.32, which stood in the names of Mae Wood and/or Lucille Moses, and another account, with Northwestern Savings & Loan Association, containing $10,300, which stood in the names of Mae Wood and/or Barbara Jeanne Butner. The remaining property interests of Mae Wood, excepting the Sausalito cottage, were in various United States savings bonds, savings and loan certificates, and savings and loan stock; these properties were listed in the following names and amounts: Mae Wood and/or Barbara Jeanne Butner ($7,800), Mae Wood and/or Lucille Moses ($3,500), Mae Wood and/or Alice Machado ($1,500), Mae Wood and/or Cynthia Butner ($700), Mae Wood and/or Bradley Butner ($700). The mother also possessed a life estate in an undivided one-half interest in the Sausalito cottage.

Subsequent to the filing of the petition, but prior to its hearing, appellant closed the bank account in the name of Mae Wood and/or Lucille Moses and redeposited the entire $5,891.32 in her sole name; appellant concealed this fact from Judge Sims.

Appellant withdrew the $4,000, authorized by Judge Sims, from the savings account in the name of Mae Wood and/or Barbara Jeanne Butner; appellant subsequently, however, without seeking court approval, cashed United States savings bonds in the face amount of $3,500 which were in the name of Mae Wood and/or Barbara Jeanne Butner; she cashed another United States savings bond with a face amount of $500 which was in the name of Mae Wood and/or Alice Machado. For these bonds appellant received a total of $4,418.50.

From August 18, 1958, until Mae Wood's death on January 4, 1959, appellant thus possessed cash in the amount of $9,391.32; of this amount appellant spent $5,326.94 on repairs to the Sausalito cottage and $2,754 for the support and care of Mae Wood. At the date of the trial a guardianship account with Hibernia Bank contained $1,276.59. At no time did appellant utilize any assets which stood in the joint names of herself and Mae Wood for either support of the latter or for repairs to the Sausalito cottage.

Subsequent to the death of Mae Wood, appellant submitted her "First and Final Account and Report." To this account Barbara Jeanne Butner filed objections, charging, among other things, that appellant had appropriated her ward's property; that appellant made improvident repairs on the

Sausalito cottage and had cashed without authorization the United States savings bonds. The objector requested the court to disallow appellant's account and order her to reimburse the ward's estate.

The court found that appellant concealed from Judge Sims the following facts: that Mae Wood possessed only a life estate in an undivided one-half of the Sausalito cottage;[1] that, subject to the aforesaid life estate, appellant and objector owned the cottage as tenants in common; that appellant closed the $5,891.32 savings account of Mae Wood and/or Lucille Moses and reopened it in appellant's sole name; that objector was a granddaughter of Mae Wood. The court also found that the objector did not receive notice of appellant's petition and did not know of the ensuing hearing until after its event; that appellant secured the withdrawal of the $4,000 from the savings account by advising respondent that she would go to court and get an order forcing respondent to join in the withdrawal of the $4,000.

At the conclusion of the hearing the court disallowed appellant's account; the court added, however, that upon appellant's filing proof of payment of $4,003.75[2] to respondent and $500 to Alice Machado, appellant's account would be approved.

Appellant epitomizes her attack upon the court's jurisdiction in these words: "The specific question is: whether a surviving joint tenant, being an objector to a first and final account of a guardian, can try title to property taken from a joint account of the ward and the objector by the guardian. ..." ■ She cites *Schecter* v. *Superior Court* (1957), 49 Cal.2d 3, 8-9 [314 P.2d 10], as authority for her position: "It has been held that the jurisdiction of the superior court while acting in its probate capacity does not extend to the determination of controversies involving title to property as between the legal representatives or those acting in behalf

[1]Appellant's attorneys seek to reargue the facts by claiming appellant did not know, prior to the hearing on the petition, that Mae Wood had conveyed her half interest to Butner and retained a life estate. Butner testified she told appellant of this deed in 1956; appellant admitted in her deposition that she had told her daughter that if the court knew Mae Wood did not own the house, she, appellant, would never have obtained the money for the repairs. The testimony obviously sufficiently supports the finding of concealment.

[2]It appears that respondent might have been entitled to some $4,190.47 since the record reveals that $8,380.94 was spent on these items: $5,326.94 for repairs to the cottage, $300 for attorneys' fees, and $2,754 for support of the ward. Respondent's attorney, who prepared the findings below, did not, however, complain of any error on appeal; hence we shall let the judgment stand as it reads.

of the estate and strangers to the estate. (*Central Bank* v. *Superior Court,* 45 Cal.2d 10 [285 P.2d 906]; *Schlyen* v. *Schlyen, supra,* 43 Cal.2d 361 [273 P.2d 897]; *Estate of Dabney,* 37 Cal.2d 672 [234 P.2d 962].)'' In *Central Bank* v. *Superior Court* (1955), 45 Cal.2d 10, 14 [285 P.2d 906], the court held that this jurisdictional limitation applied to guardianship proceedings under the Probate Code.

 Appellant's reliance upon the above cases rests upon her supposition that the instant situation posits a controversy involving title to certain property. Yet the premise cannot stand. No one disputes the joint tenancy ownership of the described property. Nor does appellant's reference to *Merola* v. *Superior Court* (1954), 125 Cal.App.2d 1 [269 P.2d 664], in this regard compel her asserted conclusion; rather, the case reinforces an affirmation of the court's jurisdiction. In *Merola* the executor sought an examination of the decedent's widow pursuant to Probate Code sections 613-615; the widow possessed certain estate properties; with the exception of three bonds which she admitted belonged to the estate, she claimed some properties as the surviving joint tenant and others as gifts executed by the decedent. The probate court ordered the widow to deliver all these properties to the executor. On appeal this court concluded that a surviving joint tenant is a stranger to the estate and held: ''We perceive no basis for the questioned order *except as it relates to the bonds which the widow concedes belong to the estate.* The basic principle is that the superior court sitting in probate is without jurisdiction to try the question of title to property as between a representative of the estate and a stranger to the estate.'' (P. 4; emphasis added.)

While we may thus dispose of appellant's authorities, we must analyze and resolve the two issues presented by this appeal: first, the propriety of the guardian's resort solely to joint tenancy property of her ward and others both for the repair of certain real estate as well as for support of the ward, and, second, the validity of the order that the proceeds of the surcharge should be paid in the designated amounts to respondent and Machado.

 As to the initial question, we do not doubt the impropriety of the guardian's unauthorized resort to joint tenancy property of her ward and others for amounts which she used in part for the repair of real estate in which she herself owned an interest. In the first place the imposition of the relation of guardian and ward does not in itself work any

termination of existing joint tenancies of the ward. ▮▮ Thus
in holding that the appointment of a guardian for an incompe-
tent does not terminate a joint tenancy bank account in which
the incompetent possessed a joint tenancy interest, the court
in *Doran* v. *Hibernia Savings & Loan Soc.* (1947), 80 Cal.
App.2d 790 [182 P.2d 630], states: "Neither the guardian's
title nor possession can be in any degree adverse to the ward's
(Prob. Code, § 1580, subd. 5). The guardian becomes vested
merely with the legal, not the beneficial, title *(De Greayer* v.
*Superior Court,* 117 Cal. 640, 644 [49 P. 983, 59 Am.St.Rep.
220]) and his possession, accordingly, is but a limited and
temporary possession, as a trustee, for the benefit of the ward."
(P. 793.) (To the same effect: *Clark* v. *State Bar* (1952),
39 Cal.2d 161, 166 [246 P.2d 1]; Prob. Code, § 1400.)

▮▮ In the second place, the relation of guardian and
ward obviously constitutes one of trust. (Prob. Code, § 1400.)
In this fiduciary status appellant was obligated to work for
the ward with single-minded loyalty to the exclusion of all
personal gain. (1 Bogert, Trusts and Trustees, § 13, p. 59.)
If the income from the ward's property then became insuffi-
cient for the ward's support and maintenance, the guardian's
remedy consisted of an application to the court; she could
sell any of the ward's real or personal property "subject to
authorization, confirmation or direction by the court. . . ."
(Prob. Code, § 1530.)

Appellant disregarded these rules. She concealed the exist-
ence of the Wood-Moses bank account from the court at the
time of the hearing of the petition; she made use of other joint
tenancy funds to repair a cottage of which she was half owner;
she sought to profit from her position of trust. Appellant thus
abused her fiduciary relationship; she became liable to re-
spondent for misappropriation from the joint accounts and
the cashing of the bonds, and to Machado for the cashing of
the bond.

The superior court, in rectifying appellant's actions, fol-
lowed the general principle that property acquired with joint
tenancy funds will be deemed to be held in joint tenancy. Thus
the court ordered appellant to pay $500 to Machado in restitu-
tion of the bond; such restitution was to come from the guard-
ianship account. The court further ordered appellant to pay
to respondent a sum equivalent to one-half of the $8,007.50
(the $4,000 savings account withdrawal and the $4,007.50
cashing of savings bonds). The rationale of this latter order
is revealed in the trial judge's comment at the close of the

trial: "I am deciding that Mrs. Butner will be reimbursed by half of the amount of the joint tenancy property that went into and will go into the expenses of the estate and the support of the mother and improvements of the house, and that includes attorney's fees."[3]

The court's disposition of the matter was entirely proper and within its power. ▮ The province of the probate court in settling the guardian's account includes the power to surcharge the guardian and to determine "all issues necessarily incidental thereto." (*Guardianship of Vucinich* (1935), 3 Cal.2d 235, 243 [44 P.2d 567].) ▮ Nor does the guardian's appointment and possession of the ward's property sever a joint tenancy (*Doran* v. *Hibernia Savings & Loan Soc.*, *supra,* 80 Cal.App.2d 790); "personal property . . . acquired with joint tenancy funds will be deemed to be held in joint tenancy, in the absence of an agreement to the contrary, regardless of the circumstances that title to said acquired property may be held by only one of the joint tenants." (*Estate of Harris* (1937), 9 Cal.2d 649, 655 [72 P.2d 873].) ▮ Misused joint tenancy property of the ward, represented here by the surcharge, may be treated by the probate court in the same manner as property that has been purchased with joint tenancy funds; such misused property retains its joint tenancy characteristic. ▮ Although normally the death of the ward results in the transfer to the executor or administrator of the deceased ward of property which the guardian possessed, "[s]urvivorship is one of the incidents of joint tenancy, and . . . the executor of the decedent has no interest in the property." (*Estate of Zaring* (1949), 93 Cal. App.2d 577, 579-580 [209 P.2d 642].) Hence, property held in joint tenancy is not subject to administration in the decedent's estate. (Cont. Ed. Bar, Calif. Estate Administration, p. 677.)

The court thus surcharged the appellant for her wrongful

---

[3]Appellant might have claimed a lack of precision in the probate court's splitting the cost of the ward's support between the two largest bank accounts in which appellant and respondent possessed interests; however, since the entire record reveals appellant's design to profit by her position as guardian, she cannot now complain that other sources, other joint tenancy assets, might have been utilized for the ward's support. In such matters, where the ward's entire properties are held in joint tenancies with several different parties, the question of the choice of the particular account to be used for the support of the ward must largely lie in the discretion of the probate court; in such a situation the guardian, pursuant to section 1516 of the Probate Code, should seek instructions from the probate court. Appellant failed to do so here,

use of property which the court had entrusted to her and, in ordering the surcharge to be paid to Butner and Machado, the court relied on the following rules: (1) personal property acquired with joint tenancy funds is deemed joint tenancy property; (2) as between the surviving joint tenant and the decedent's executor or administrator the latter is not entitled to the joint tenancy property; (3) a ward's property is in *"custodia legis,* subject only to the orders of the court." (*Guardianship of Cuen* (1956), 142 Cal.App.2d 258, 262 [298 P.2d 545].) The probate court therefore did nothing more than release such custody to the surviving joint tenants. "It is not supposed that the jurisdiction of the probate court was to be so limited as to render the exercise of its power . . . [to settle guardians' accounts] ineffectual." (*Dobbins* v. *Title Guar. & Trust Co.* (1943), 22 Cal.2d 64, 67 [136 P.2d 572].)

Appellant's citation of *Doran* v. *Hibernia Savings & Loan Soc., supra,* 80 Cal.App.2d 790, does not bear upon the problem. In that case the ward was a joint tenant in two bank accounts, the other joint tenants being respectively the guardian and a nephew of the ward; upon the death of the ward the bank account in which the guardian possessed an interest had increased by $621.55, while the other account had decreased $332.06. The court did not discuss the propriety of this increase in the ward-guardian account and the decrease in the other account; hence the case does not apply here.

Appellant's second contention, that the court did not disapprove or disallow any of appellant's advances ignores the court's findings of fact and conclusions of law. The court specifically stated "the First and Final Account of said Guardian . . . is, disallowed." The court's XXVIIth finding recited that if appellant "had . . . made a full, fair and honest disclosure to the Court at the inception of and during the course of the said guardianship proceedings" and furnished the court with all of the relevant facts, the court would have "decreed that any and all expenditures for and on behalf of the said Mae Wood, would be equally shared" by appellant and respondent. The court further found that it was not the intention of Mae Wood to permit appellant to resort "to certain specific joint tenancy funds" for the care of the ward "to the exclusion of monies or property which stood in the joint names of" the ward and appellant. Thus the court reconstructed the legal situation as it would have coalesced

if appellant had properly performed her duties as guardian, and upon that basis the court described appellant's liabilities.[4]

This finding completely disposes of appellant's argument that "[s]ince the Court did not disapprove or disallow any of the advances made by the guardian, the First and Final Account should have been ordered settled. . . ." The facts which the court recites refute any such compulsion of acceptance of the account. This analysis of the decree also rebuts appellant's reliance upon *Guardianship of Ewing* (1941), 42 Cal.App.2d 629 [109 P.2d 748], for the proposition stated therein that, "If the expenditures by the guardian were just and equitable they should be allowed notwithstanding the guardian failed to obtain an order from the court in advance." (P. 630.)

Appellant's third contention, that she managed the estate frugally and applied the income to the ward's benefit, does not bear upon, or even relate to, the court's order. The issue decided below involved appellant's use of her position of trust to attempt to profit personally; first, by concealment of the $5,891.32 bank account and then, through such concealment, by the procurement of an order from the probate court to withdraw money from the solely disclosed savings account (the Wood-Butner account) to repair property in which appellant had an interest. Appellant apparently expected thereby to profit upon the death of the 78-year-old ward. The trial court merely frustrated the consummation of appellant's illicit design.

In summary, the procedures of the probate court are neither so rigid nor so unrealistic as to forbid the reimbursement to a surviving joint tenant of the amounts wrongfully appropriated from such joint tenancy accounts by a designing guardian who would personally benefit from such deprivations.

The order denying new trial being a nonappealable order, the purported appeal therefrom is dismissed. We affirm the judgment.

Bray, P. J., and Duniway, J., concurred.

A petition for a rehearing was denied July 19, 1961, and appellant's petition for a hearing by the Supreme Court was denied August 16, 1961.

---

[4]This analysis of the XXVIIth finding also answers appellant's strained contention that this finding assumes matters not in evidence, namely what Judge Sims would have done, and what Mae Wood's intention would have been, in resorting to funds wherein appellant and respondent possessed interests.