(No. 29021.—▮▮▮▮▮▮▮▮)

JANE THOMPSON TINDALL, EXTX., *et al., vs.* ISABELLE YEATS *et al.,* Appellees.—(JANE THOMPSON TINDALL, *Exrx.,* Appellant.)

*Opinion filed January 23, 1946.*

ALBERT PUCCI, of Hennepin, for appellant.

VERLE W. SAFFORD, of Peoria, for appellees.

Mr. JUSTICE SMITH delivered the opinion of the court:

This case comes to this court on the direct appeal of Jane Thompson Tindall, as executrix, from the order of the circuit court of Marshall county, dismissing a complaint in equity filed by the plaintiffs below. The complaint sought a construction of certain deeds and an agreement of Grace Adams, appellant's testatrix, together with a construction of the will of Grace Adams. The complaint also sought partition of the real estate involved. A freehold is involved.

By her will, which was admitted to probate by the county court of Marshall county on June 5, 1944, Grace Adams, after making provision for the payment of certain legacies, devised and bequeathed to Jane Thompson Tindall, as executrix, the residue of her estate and directed that the executrix liquidate the same and divide the proceeds among certain named beneficiaries. All of the specific legacies and bequests have been paid.

The complaint, which was filed on July 13, 1944, by the executrix and certain of the testatrix's brothers, alleged that on May 31, 1939, Grace Adams was the owner of the east ½ of the west ½ of section 3, township 13 north,

range 10 east of the fourth principal meridian, situated in Marshall county, Illinois; that on that day she and her husband, by warranty deed, conveyed the real estate to Walter C. Overbeck; and that on the same day Overbeck reconveyed the real estate to Grace M. Adams and Margaret Isabelle Yeats, (who is the same person as Isabelle Yeats,) as tenants in common; that as an integral and inseparable part of the above transaction Grace Adams and Isabelle Yeats entered into the following contract:

"THIS AGREEMENT; Made this 31st day of May A.D. 1939, between Grace M. Adams, hereinafter referred to as the First Party, and Margaret Isabelle Yeats, hereinafter referred to as the Second Party,

WITNESSETH:

Whereas the First Party has this day and date vested title in the parties hereto as joint tenants in the Marshall County, Illinois, farm owned by the First Party, all evidenced by certain deeds executed by the First Party and Martin A. Adams, her husband, and Walter C. Overbeck, all of the within date;

Now Therefore, in consideration of having vested title of said real estate as aforesaid, The Second Party herein, in consideration thereof, agrees with the First Party that said First Party shall have all the rentals from said real estate and the possession thereof during the term of her natural life, with power and authority to insure the buildings thereon, make repairs and do such other things thereon as she could or would do were she the sole and exclusive owner thereof. This Agreement shall not, however, in any manner affect the joint tenancy of said real estate nor the legal incidents accompanying same.

Dated this 31st day of May, A.D. 1939.

GRACE M. ADAMS,   (Seal)<br>MARGARET ISABELLE YEATS, (Seal)"

The complaint further alleged that on June 4, 1941, Grace Adams discovered that the deed from Overbeck, dated May 31, 1939, by which the real estate was conveyed to her and Isabelle Yeats, conveyed the land to them as tenants in common, and not as joint tenants; that on June 4, 1941, Grace Adams, a widow, Isabelle Yeats and her husband executed a deed conveying the real estate to one Kathryn Krenz; that on June 12, 1941, Kathryn Krenz

conveyed the real estate to Grace Adams and Isabelle Yeats as joint tenants. It is further alleged that the deed of Kathryn Krenz to Grace Adams and Isabelle Yeats was but a correction deed given at the direction of Grace Adams and subject to the terms of the agreement set out above. The complaint further alleges that under the above deeds and agreement the real estate was held by Grace Adams and Isabelle Yeats as tenants in common. It was further alleged that Isabelle Yeats claimed to own all of the real estate as surviving joint tenant and concluded with a prayer that the deeds, agreement and will be construed and that the court decree the executor and Isabelle Yeats each seized of an undivided one-half of the real estate as tenants in common and that the premises be partitioned.

The answer of Isabelle Yeats admits all the allegations in the complaint except the legal conclusion that a tenancy in common was created and maintains that the deeds conveyed title to the grantees, as joint tenants, and that she owns the entire fee in the property by virtue of the right of survivorship upon the death of Grace Adams. Plaintiffs filed a replication to this answer in which they denied that a joint tenancy between Grace Adams and Isabelle Yeats was created.

By an amendment to their complaint, plaintiffs subsequently alleged that continuously from and after May 31, 1939, to the date of her death Grace Adams exercised full, complete and undivided control and supervision over the said real estate, that she alone entered into and terminated leases, waived forfeiture or forfeitures of existing leases, provided for repairs, taxes and insurance from her own funds, and that all of such acts were done by Grace Adams in pursuance of the terms and provisions of the agreement set out above and that Isabelle Yeats at all times agreed to and acquiesced in the manner, method and extent of the control and supervision exercised by Grace Adams in connection with the real estate and concludes with the allega-

tion that such acts on the part of Grace Adams, acquiesced in by Isabelle Yeats, worked a severance of the joint tenancy, if such did exist, and created a tenancy in common.

The answer to the amendment to the complaint set forth that the exercising of control and supervision on the part of Grace Adams was with the knowledge and consent of Isabelle Yeats and that said Grace Adams was doing so as her agent and joint cotenant and denied that the acts set forth in the amendment to the complaint affected the joint tenancy or worked a severance thereof. To this answer plaintiffs filed their reply.

The cause was referred to a master and, upon the pleadings as outlined above and testimony taken before him, he found that Grace Adams, desiring to effect a joint tenancy of the real estate involved, conveyed the title thereto to Walter C. Overbeck who in turn reconveyed the property to Grace Adams and Isabelle Yeats, but that through inadvertence and mutual mistake the property was conveyed to the latter as tenants in common rather than as joint tenants; that subsequently thereto, and upon the discovery of the omission and mutual mistake, and for the purpose of correcting the former conveyance, the deed of June 4, 1941, to Kathryn Krenz and the deed back from her on June 12, 1941, resulted in an effective conveyance of the property in question in joint tenancy. The master further found that the agreement between Grace Adams and Isabelle Yeats, set out in full above, was executed contemporaneously and as an inseparable part of the original transaction by which it was attempted to place the title to the propertly jointly in Grace Adams and Isabelle Yeats. The master further found that it was agreed between Grace Adams and Isabelle Yeats, with their full acquiescence and knowledge and consent, that Grace Adams was given authority to look after the rentals, insurance and making of repairs. The master recommended the dismissal of the complaint. The chancellor overruled exceptions to the

master's report, approved the same and dismissed the complaint for want of equity.

The facts are not in dispute. The controversy involves the questions: Did the parties create a legally effective joint tenancy? And, if such joint tenancy was created, was it severed by the contract and acts of the parties? From an examination of the evidence and exhibits there can be no question but what it was the intent of the parties to create a joint tenancy; nor is there any doubt but that the parties never voluntarily intended to sever what they considered to be a joint-tenancy relationship. It is apparent to us, and the pleadings so admit, that the contract of May 31, 1939, was an integral part of the transaction involving the first attempt to create a joint tenancy by the deed to Walter C. Overbeck and the deed from him to Grace Adams and Isabelle Yeats. Furthermore, the second deed, made after the discovery of the error in the first one, was but a correction deed. The parties involved still considered the contract as being in force and regulating their relations. Grace Adams did not attempt to dispose of the real estate involved, by description, in her will.

In the construction of deeds the court seeks to ascertain the intention of the parties and that intention, when found, will be given effect if it is consistent with the language used and with the law and public policy. (*Porter* v. *Porter,* 381 Ill. 322.) It is equally true that while the intention of the parties to a deed will be given effect if that can be done consistently with the rules of law and public policy, the operation of a deed on the legal title to real estate is not controlled by the intention of the parties, but is governed by law. *Deslauriers* v. *Senesac,* 331 Ill. 437.

The rule is well settled that in order to create a joint tenancy there must be unity of interest, title, time and possession. (*Porter* v. *Porter,* 381 Ill. 322.) This established rule is conceded. That the deed from Overbeck to Mrs. Adams and Mrs. Yeats, dated May 31, 1939, as cor-

rected by the deed from Kathryn Krenz to the same grantees, dated June 12, 1941, was sufficient to create a joint tenancy, unless modified by the contract between Mrs. Adams and Mrs. Yeats, which was executed at the time the first deed was made, must also be conceded. Appellant's contention is that this contract destroyed the unity of possession and that the title vested in the grantees, not in joint tenancy but as tenants in common. It is contended by appellant that the effect of the contract was to vest in Mrs. Adams a life estate, which severed the joint tenancy. It is argued that the acts of Mrs. Adams in exercising control over the real estate, under the contract, by renting it, insuring the buildings thereon in her own name, collecting the rents and appropriating the same to her own use, and making repairs on the buildings, and paying the taxes, also operated as a severance of the joint tenancy and that, at her death, the parties held the title as tenants in common and not as joint tenants.

That a joint tenancy will be destroyed by the destruction of any one of its necessary unities, is axiomatic. The question here is: Did the contract destroy the unity of possession? By the contract, Mrs. Yeats agreed that Mrs. Adams should have all rents from the land and the possession thereof during the life of Mrs. Adams, with power and authority to insure the buildings, make repairs and do such other things as she could or would do were she the sole and exclusive owner. The contract specifically provided that it should not in any manner affect the joint-tenancy ownership or the legal incidents accompanying such ownership. It is, therefore, clear that the parties did not intend that the relation created by the contract should alter or affect their ownership as joint tenants in any way.

As joint owners, independent of the contract, either of the parties had the power and authority to insure the buildings, make repairs and do any other acts which she could or would do were she the sole and exclusive owner, not

inconsistent with the joint ownership. The contract did not authorize Mrs. Adams to insure the property in her own name. On the date the deed and contract were made, there was a policy on the property in the name of Mrs. Adams, who was the sole owner at the time the policy was written. This policy was renewed in 1944. It is not shown that at the time the policy was renewed the agent consulted Mrs. Adams as to how he should write it. It is not shown that it was renewed in the name of Mrs. Adams, with the knowledge or consent of Mrs. Yeats. Nevertheless, such insurance would be for the benefit of both, however written. The making of necessary repairs by the tenant in possession is an incident to all cotenancies. When such repairs are made, they inure to the benefit of both, and both are equally liable for the expenses incurred in making such repairs. 33 C. J., p. 910, sec. 15.

The contract did not purport to lease only the interest of Mrs. Yeats in the joint estate. It was a contract relating to the possession of the interests of both in the whole estate. It was not entered into by Mrs. Yeats as the owner of a one-half interest in the land. She contracted as one of the joint owners of the whole estate. Other than the things which each tenant had the right to do as an incident to their joint ownership, the only effect of the contract was that Mrs. Yeats waived the right to an accounting for rents and profits, which she would otherwise have been entitled to under section 4a of an act to revise the law in relation to joint rights and obligations. (Ill. Rev. Stat. 1945, chap. 76, par. 5.) After the contract was made, the possession of Mrs. Adams of the whole estate was still the possession of both. She had possession of the entire estate with the consent of her cotenant. Such possession was in no way inconsistent with their joint ownership or possession, or right of possession as joint tenants. Had Mrs. Yeats leased the entire estate to a stranger, upon the terms written in the contract, for the life of such tenant, no one

would contend that this would have worked a severance of the joint tenancy. A severance means a separation of the interests of the joint tenants, a vesting of the interest of one, separated from the interest of the other, in some third person. Here, there was no severance and no attempt to sever the interests of the joint tenants. Joint tenants may contract with each other concerning the use of the common property, such as for the exclusive use of the property by one of them. (33 C. J., p. 911, sec. 17.) They may, by contract, provide for the exclusive possession of one for such time as may be agreed upon by them. (*Curtis* v. *Swearingen,* Breese 207.) Moreover, if there was anything in the contract which, standing alone, could be construed as affecting the rights of the parties as joint tenants, such provisions are nullified by the last clause of the contract by which it was provided that the contract should not in any manner affect the joint tenancy or the legal incidents accompanying the same. The possession of Mrs. Adams, under the contract, was, by its terms, expressly made subject to the right of possession of both, as joint tenants. It did not destroy that right.

When the contract and the deeds are construed together, as they must be, it is clear that it was the intention of the parties that Mrs. Adams should enjoy the possession of the entire estate. The possession of Mrs. Adams was the possession of both, with the permission and consent of her co-tenant. It did not destroy or operate as a severance of the joint estate. If the contract could be construed as a conveyance of such an interest in the land as would work a severance of the joint estate, it was, by its own terms, inoperative to that extent. The parties to an agreement have the right to make their own contract, and their intention, when not in conflict with rules of law, good morals or public policy, must be enforced. (*Parker-Washington Co.* v. *City of Chicago,* 267 Ill. 136. Here, the intention of the parties

is perfectly clear. It does not violate any rule of law, good morals or public policy. It should be enforced.

While it is true that the sale or mortgage by one joint tenant of his interest in the joint estate will sever the joint tenancy, in *Hardin* v. *Wolf,* 318 Ill. 48, where one joint tenant executed a trust deed on his interest to his cotenant for the sole purpose of preventing the grantor in the trust deed from selling or encumbering his interest in the estate, it was held that the trust deed would be construed only as a contract that the property should not be partitioned, and not as a severance of the joint estate. Even though the execution of the trust deed on the interest of one of the joint tenants would ordinarily be sufficient to sever the joint estate, the court ascertained the intention of the parties and carried out that intention. Here, the intention of the parties, expressed in the contract, is that neither the execution of the contract nor anything done under the contract, should, in any manner, affect the joint tenancy or the legal incidents accompanying the same. That intention must be enforced.

The decree of the circuit court of Marshall county is affirmed.

*Decree affirmed.*

Mr. JUSTICE GUNN, specially concurring.

when sentence was imposed, the defendant, being competently represented by counsel, cannot complain that his application for probation was summarily denied without an investigation, the record showing he had the benefit of a hearing by the court. (*People v. Donovan,* 376 Ill. 602, distinguished.)  (p. 516)