*In re* ESTATE OF FRANCES BRACH, Deceased.—(HARRIET BRACH ODUM, Indiv. and as Ex'r of the Estate of Frances Brach, Petitioner-Appellant, *v.* W. R. TODD, Conservator of the Estate of Frances Brach, Respondent-Appellee.)

Fifth District    No. 79-43

Opinion filed October 1, 1979.

Harris and Lambert, of Marion, and Carl D. Sneed, of Herrin, for appellant.

Cochran & Garrison, of Fairfield, for appellee.

Mr. PRESIDING JUSTICE JONES delivered the opinion of the court:

In both her individual and representative capacities petitioner appeals from orders of the trial court which made disposition of assets of the conservator and decedent estates of Frances Brach. Of the three issues raised on appeal in this case two relate to involuntary severance of joint tenancies in personal property.

Frances Brach acquired at various times late in her life several savings bonds and certificates of deposit which were issued in joint tenancy with several different joint tenants. Each savings bond or certificate of deposit was issued in the names of herself and only one other joint tenant. On October 15, 1976, she was adjudged an incompetent and a conservator was appointed. After one year with a conservator Ms. Brach was in very poor health, apparently suffering from a terminal illness and expected to live but a short time. Her other assets being depleted, the conservator petitioned the court for permission to liquidate some of the jointly held bonds and certificates of deposit to meet the expenses of her care. Following notice which was sent to all joint tenants a hearing was held and an order of court was entered on September 6, 1977. It apparently reflected the wishes of the parties as they were expressed in the hearing. The order provided that the conservator would liquidate all the jointly held bonds and certificates, place the proceeds thereof in an interest-bearing account and make necessary withdrawals for expenses of the ward. Upon the death of the ward the funds remaining at the time were to be applied first to the payment of all expenses, including those of last illness and the funeral. Thereafter the balance was to be distributed ratably to each of the persons whose names appeared on the several jointly held bonds and certificates. Each person whose name so appeared was to receive as his share of the remaining funds the proportion his interest bore to the total sum at the time the order was entered.

The bonds and certificates were liquidated in due course and expenses were paid from the account in accordance with the order. About six months after the order was entered Frances Brach died. There remained of the liquidated bonds and certificates approximately $42,000.

The conservator filed his final report on April 7, 1978, and was ordered, pursuant to his request, to turn over to the personal representative of the estate of Frances Brach, deceased, all assets including any money held by him. To this order some of the surviving joint tenants objected. As a result another order was filed on September 20, 1978, reinstating the order of September 6, 1977, and at the same time setting aside the order of April 7, 1978.

On October 10, 1978, without having petitioned for leave to intervene, the decedent's stepdaughter, the petitioner herein, Harriet Odum, filed an "Objection to Order of Court," addressed to the order of September 20, 1978. She claimed that the order of September 6, 1977, requiring distribution to the surviving joint tenants was of no force and effect because the joint tenancies had been severed as a result of either the adjudication of incompetence and appointment of a conservator on October 15, 1976, or the order itself of September 6, 1977, providing for liquidation of the joint accounts. The court entertained Harriet Odum's objection and overruled it on November 3, 1978, ordering the conservator to comply with the prior order of September 6, 1977.

Frances Brach's will had been filed for probate on April 7, 1978. On November 20, 1978, letters of office were issued to Harriet Odum. On December 1, 1978, Harriet Odum petitioned for and was granted leave to intervene individually as sole beneficiary and as executor of the last will of Frances Brach. On that same day she filed notice of appeal from the orders of September 6, 1977, and November 3, 1978.

In her brief to this court she argues for the first time that the savings bonds and certificates of deposit were not properly shown at the September 1977 hearing to have been held in joint tenancy and that, in fact, they were not so held for failure to comply with the requirements of the joint rights and obligations act (Ill. Rev. Stat. 1977, ch. 76, par. 2).

■■ The rule that an issue can not be raised for the first time on appeal needs no citation of authority. Appellant argues that she should be excused from the application of the rule because to do otherwise would be "harsh and unjust." We disagree. She claims that because she was not appointed executor until December 1, 1978, she could not have protected the estate by raising the issue in the trial court when the hearing was had. She argues further that it would be "unfair and illogical" to apply the rule because she was not "allowed" to intervene until December 1, 1978, the day her notice of appeal was filed. It is more accurate to say, however, that appellant for whatever reason chose not to petition to intervene until the day notice of appeal was filed. Her attorney was present on September 20, 1978, moving orally to stay the execution of the order of that day until October 10, 1978, "for time to file objections thereto." Thus, she could have petitioned for leave to intervene on or before September 20, 1978. She objected to the September order in her individual capacity on the October date without having intervened. There is no reason why she could not have included in her written objection of October 10, 1978, the additional contention that the statutory requirements for forming a joint tenancy had not been met. Doubtless the court would have considered that contention as it did the others made by her. We believe that her October objection was tantamount to intervention in her

individual capacity. Since she was both executor and sole beneficiary under the will and objected in her individual capacity, it makes no difference in the operation of the rule that she could not have intervened as executor until the day notice of appeal was filed. She will not be heard to say that she should be able to raise an issue for the first time on appeal as executor which she failed to raise previously in her individual capacity as sole beneficiary under the will.

Finally the appellant claims that the rule ought not to be applied because "[i]t was not until the Record on Appeal was prepared by the court reporter and Circuit Clerk that petitioner became aware that no evidence had been offered concerning how the U.S. Savings Bond and Certificates of Deposit were held." The order to which she objected in October 1978 issued from a hearing held over one year before. Appellant could have availed herself of the transcript of the proceeding when she made her objection.

For these reasons we decline to permit appellant to raise for the first time on appeal the issue of whether the funds were in fact held in joint tenancies.

Since we deem the disputed personal property to have been held in joint tenancy there remain the questions of whether a severance of the joint tenancy was effected either by the order to liquidate the bonds and certificates or by the adjudication of incompetency and the appointment of a conservator. In general the cases appellant cites to these issues have been overruled, or are not on point, or both. Appellee cites none.

■■■ No jurisdiction, it seems, including our own, has ever addressed the issue of whether a court order for liquidation severs a joint tenancy. In Illinois a joint tenancy is severed by the destruction of any one of the necessary unities of time, title, interest and possession. (*Tindall v. Yeats* (1946), 392 Ill. 502, 508, 64 N.E.2d 903, 906.) It is hornbook law that severance may occur voluntarily by transfer by one of the joint tenants (*cf. Szymczak v. Szymczak* (1923), 306 Ill. 541, 138 N.E. 218), or involuntarily by execution upon a judgment against one of the joint tenants (*cf. Spikings v. Ellis* (1937), 290 Ill. App. 585, 8 N.E.2d 962). Also, joint tenants may mutually agree to hold as tenants in common and in so doing sever the joint tenancy. (*Duncan v. Suhy* (1941), 378 Ill. 104, 109, 37 N.E.2d 826, 829.) The agreement to terminate need not be express. It may be implied from conduct of the parties inconsistent with holding in joint tenancy where both, or all, joint tenants are owners and, of course, possessors of the whole. *Duncan v. Suhy.*

In this case no one would contend that the parties made any transfer of any of the jointly held instruments, though appellant might have urged that when the need to liquidate the bonds and certificates arose the parties in effect petitioned the court for partition. The facts, however, are to the

contrary. When they sought the aid of the court, they did so to preserve their interests as joint tenants, not to destroy them. No party ever asked that the proceeds of any bond or certificate be divided into two equal parts as would have been done in partition. The conservator as well as the other parties wished—and that intent is manifest in the record—to preserve the joint tenancy with the right of survivorship. The conservator's petition which initiated the action noted the need for funds for the care of his ward and prayed for "the advise and guidance of this court in this matter and for an Order to be entered by this court to convert additional investments as are necessary, to cash, to be expended for the care of the said Frances Brach." Following notice and hearing the court found, in its September 6, 1977, order, "that it is necessary to convert said [jointly held certificates of deposit and bonds] investments to cash *and in order to not disturb the indicated plan of disposing of said alleged incompetent's assets at the time of her death* * * *." (Emphasis supplied.) The order concluded with the terms for cashing, investment, use and ultimate pay-out described above.

■■ The court's scheme for handling the problem presented is plain. Rather than favor one or some of the joint owners at the expense of one or some of the other joint owners by ordering the cashing of particularly designated instruments while leaving others intact, the court provided a mode of proceeding which treated all joint owners in exactly the same manner they had been treated by the ward. We find the court's order of September 6, 1977, to be innovative, equitable and commendable.

Although inapplicable to this case, we would also note the existence of an Illinois statute which transfers the joint tenancy aspects of jointly held property when by eminent domain that property is taken and payment for the taking is deposited with the county treasurer. (Ill. Rev. Stat. 1977, ch. 76, par. 2(d).) While authorized by statute the operative factor in the process is an order of court, and we think it furnishes some precedential basis for finding that an order of court may not only sever but may as well preserve the joint ownership aspects in the proceeds of joint property otherwise ordered disposed.

Since severance is accomplished by destruction of one or more of the unities found in joint tenancies, the remaining question is whether the adjudication of incompetence and the appointment of the conservator altered any one of them. "A severance means a separation of the interests of the joint tenants, a vesting of the interest of one, separated from the interest of the other, in some third person." *Tindall v. Yeats* (1946), 392 Ill. 502, 510, 64 N.E.2d 903, 906.

■■ ■ In Illinois "[t]he guardian of an estate is not vested with title to a minor's estate; rather, he is charged with its care and management." (*In re Estate of Hardaway* (1960), 26 Ill. App. 2d 493, 497, 168 N.E.2d 796, 798;

*In re Estate of Sheehan* (1937), 290 Ill. App. 551, 556, 9 N.E.2d 63, 65.) We see no reason why the rule should be different for conservators of the estates of incompetents. While "[c]onservators, executors, administrators and guardians serve in the same fiduciary capacity as trustees" (*Nonnast v. Northern Trust Co.* (1940), 374 Ill. 248, 261, 29 N.E.2d 251, 259), they are not, like trustees, vested with legal title to their wards' estates. As long as passage of title does not occur with the appointment of a conservator, and there is no vesting of the interest of the ward in a third person, such as the conservator, there is no destruction of the unity of title. Because the conservator has only the duty of care and management of the estate, and obtains no interest in the property, there is no destruction of the unity of interest. The unity of time and of possession are unaffected by the appointment of a conservator. Therefore we hold that an adjudication of incompetence and the appointment of a conservator did not sever the joint tenancies in question.

In addition to the theoretical reason for holding that adjudication of incompetence and appointment of conservator does not sever a joint tenancy there is a strong policy reason. To hold otherwise would greatly disrupt the estate planning of the many who rely upon the "poor man's will" of joint tenancy with its right of survivorship, a device well known to be used by rich and poor alike, often in lieu of a will but many times, as here, in conjunction with one. In fact, the existence of a "plan" by Frances Brach in her pattern of holding the joint tenancy savings bonds and certificates of deposit was acknowledged by both the conservator and the court during the hearing for liquidation.

A few other jurisdictions expressly or impliedly have considered the issue of whether the declared incompetence of a joint tenant affects survivorship rights of joint tenants or joint depositors. Perhaps the best summary of that law comes from Ohio:

"With reference to proprietary rights during the lifetimes of the depositors, one of whom has become incompetent, there is no discernable [*sic*] harmony among the cases ° ° °.

But the situation is different with respect to survivorship rights. If not in theory, then at least in terms of results, there is virtual unanimity in the decisions which have considered the question. Without exception these courts have followed the rule that if, under the circumstances and the applicable law, the surviving joint depositor would have been entitled to the balance of the account in the absence of any intervening incompetency, the fact that one joint depositor becomes incompetent does not destroy his survivorship rights, or those of the other depositor. [Citations.]" *National City Bank v. Hewes* (1962), 21 Ohio Op. 2d 196, 198, 186 N.E.2d 644, 647.

Later the Supreme Court of Ohio held in *Miller v. Yocum* (1970), 50 Ohio Op. 2d 372, 375, 21 Ohio So. 2d 162, 168, 256 N.E.2d 208, 212, that neither the incompetence of one of the parties to a joint account nor the appointment of guardian terminates the joint and survivorship nature of the account as a matter of law. (Also see *Guerra v. Guerra* (1970), 54 Ohio Op. 2d 14, 265 N.E.2d 818.) Although the Ohio court in *Miller* dealt with a survivorship bank account, we agree with the court's reasoning and find that it accords with our own law relating to the severance of joint tenancy.

We note that some California courts have held the appointment of a guardian, despite his taking legal (though not beneficial) title to his ward's property, does not sever a joint tenancy. (*Doran v. Hibernia Savings & Loan Society* (1947), 80 Cal. App. 2d 790, 792-93, 182 P.2d 630, 632; *In re Estate & Guardianship of Wood* (1961), 193 Cal. App. 2d 260, 266, 14 Cal. Rptr. 147, 151.) The court in the latter case found that such taking of title was insufficient to disrupt the requisite unities. We, of course, had not the same potential disruption since in Illinois the conservator has, as discussed above, neither legal nor equitable title to the estate of his ward.

For the foregoing reasons the orders of September 6, 1977, and November 3, 1978, should be upheld.

Affirmed.

KARNS and KASSERMAN, JJ., concur.