**BROWN, Estate of, In Re.**

Probate Court, Ross County.

No. 27034.   Decided April 26, 1948.

J. Francis Cutright, Chillicothe, Guardian of the person and estate of P. T. C. Brown, Jr., Incompetent.

J. H. Moesta, Cincinnati, United States Fidelity and Guaranty Company.

## OPINION

By STEVENS, J.

J. Francis Cutright, as Guardian of the person and estate of P. T. C. Brown, Jr., an incompetent, has filed an application for the fixing and allowance by this court of a reasonable sum to be paid a corporate surety as bond premium for becoming his surety in accordance with §9572 GC.

### APPLICATION NOT PREMATURE.

It might be said at the outset that while §9572 GC permits the allowance of a reasonable sum, within maximum limits, for bond premium paid a surety company, it contemplates that it shall be done "in the settlement of his account as such fiduciary." Since the guardian was lately appointed no account is before the court. To say that this proceeding is prematurely brought might be possible were it not for other provisions of law making the guardian's position tenable.

Having entered into a contract for bond and secured the same, good business dictates that the guardian should pay the premium. Ordinary prudence would require him to ascertain the legal rate of premium allowable or for which he might claim credit or reimbursement, for if challenged later, the law places the burden on him to justify his disbursements

by showing that they are in such reasonable amounts as the law permits. **In re Estate of Erikson (1942) 71 Oh Ap 229, 26 O. O. 41, 49 N. E. (2d) 75.**

The court recognizes that §9572 GC permits the court to allow a fiduciary credit for a reasonable expenditure for surety bond premium, but has no other application to contracts between the fiduciary and such surety company in the issuance of such bond as against the trust estate. **St. Paul Indemnity Co. v Stockum (1941) 34 Abs 198.** Like any other expenditure which he may make, unless and until approved by the court it may not become a liability of the estate. It is possible for a fiduciary to contract for protection beyond that required by law and become liable therefor, but not so as to bind the estate.

Faced, therefore, with several interrelated but separately enacted statutes materially affecting the legal relations between the guardian, the corporate surety and the court, it is natural that the guardian should seek surcease in the adage "To be forewarned is to be forearmed."

Therefore, when as in the instant case, notice of application has been given to those adversely interested who are represented at the hearing, such application will be entertained. **Trumpler v Royer, (1917) 95 Oh St 194, 115 N. E. 1018.**

PROCEEDING WITHIN SPIRIT OF UNIFORM DECLARATORY JUDGMENT ACT.

Since the maximum rate of bond premium allowable by the court under the statutes is in actual controversy between the guardian and the corporate surety in the instant matter, ample authority for the court to determine the question exists in the Uniform Declaratory Judgment Act, §§12102-1 to 16 GC.

Such act reads in part as follows:

"**Sec. 12102-1 GC.** Courts of record within their respective jurisdictions shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed. No action or proceeding shall be open to objection on the ground that a declaratory judgment or decree is prayed for—".

"**§12102-2 GC.** Any person interested under a—written contract or other writings constituting a contract, or whose rights, status or other legal relations are affected by statute,—contract—, may have determined any question of construction or validity arising under the instrument, statute—contract—and obtain a declaration of rights, status or other legal relations thereunder."

"§12102-4 GC. Any person interested as or through—guardian or other fiduciary, in the administration of a trust, may have a declaration of rights or legal relations in respect thereto:—(b) to direct the —fiduciaries to do or abstain from doing any particular act in their fiduciary capacity; or (c) to determine any question arising in the administration of the estate or trust, including questions of construction of—other writings."

"Sec. 12102-5. The enumeration in §§2, 3 and 4 (§§10502-2-3-4) does not limit or restrict the exercise of the general powers conferred in section 1, in any proceeding where declaratory relief is sought in which a judgment or decree will terminate the controversy or remove an uncertainty."

The jurisdiction of the court in declaratory judgment actions not being limited to cases in which no other possible remedy is available and such action being alternative to other remedies, the court finds that this action is within the spirit of the Uniform Declaratory Judgment Act; that a real controversy between adverse parties exists which is justiciable in character, and that speedy relief is necessary to the preservation of rights that may be otherwise impaired or lost. **Radaszewski v Keating, 141 Oh St 489, 26 O. O. 75, 49 N. E. (2d) 167; Meyers v Johnston, 28 O. O. 334, 14 O. Supp. 65;** Borchard—Declaratory Judgments, 2d. Ed.

DEPOSIT OF SECURITIES AND FIXING OF BOND.

The evidence discloses that ward's estate amounts to $597,516.40; comprised of $48,380 in real estate, $427,500 in government bonds and the balance of $121,636.40 in savings account, checking account, checks and cash.

During competency, the ward held his personal assets in the vault of The First National Bank of Chillicothe, Ohio. Upon the filing of the application for appointment of guardian and before the issuance of letters the applicant, who was later appointed guardian, applied to the court for an order directing the deposit of such government bonds of the value of $427,500 in the same depository in which they had been kept by the ward. Under such circumstances the court deeming it neither advantageous, useful or advisable to require a bond for over one million dollars, granted the application and finding that the value of the estate or fund was so great that it deemed it inexpedient to require security in the full amount prescribed by law, directed and designated by order of court that such bonds belonging to the estate be deposited with the depositary named in the application, it being duly incorporated and

qualified under law to receive such deposit. After such deposit had been made, and after the filing with the court of a receipt for said bonds executed by said bank, which receipt acknowledged that said bonds were held by said bank subject to the order of the court, the court fixed the amount of the bond with respect to the value of the remainder only of the estate. The amount of the remaining personal assets not so deposited being of the value of $121,636.40 bond was fixed with penal sum in the amount of $245,000 being not less than double the probable value of the personal estate, under all facts and circumstances, and of the real estate rentals which would come into the hands of such fiduciary. Guardian gave bond in the amount fixed with surety company authorized under the laws of Ohio to become surety on such bonds and which had complied with the laws of Ohio relative to it, which bond has been filed and approved by the court.

The foregoing method of depositing was in conformity with comment appearing under §10506-23 GC in Deibel's Ohio Probate Law Practice and Forms, Fourth Edition, Art. 704, at page 343, as follows:

"Of course, if the fiduciary file an acknowledgement by a responsible custodian that he (or it) holds the securities subject to the order of the court, a lower bond may at once be allowed."

And again at page 343,

"So, where the court is positive of no risk, it might fix the bond at a small sum in the first instance; but in that case the deposit should be made and receipt filed forthwith, if the receipt is not presented when the application for appointment is filed."

The above comment was doubtless to put at rest an earlier notion that in every instance the court was required to demand bond in the full amount prescribed by law under §10506-4 GC.

Admitting the court has discretionary power, after impounding, to fix bond so as to cover deposited securities; any assumption that it would or ever should do so renders the impounding status ineffectual and the law a farce. Their passage would have been as much a disservice as "carrying coals to Newcastle."

CONSTITUTIONALITY OF §§10506-23-24-25 GC.

A question has arisen as to the authority of the court to direct the deposit of the securities in the first instance.

Whether or not a guardian can be deprived of his authority or interest as custodian by an act of the legislature or by an order of the Court forbidding him possession and control over assets of his ward, directing their deposit and prohibiting their withdrawal except upon special order of court, depends upon the nature of Constitutional provisions, statutory law and the authority of the court arising therefrom.

In the case of DeGreayer v Superior Court (1897) 117 Cal. 640, 49 Pac. 983, 59 Am. St. Rep. 220 (see annotations 45 L. R. A. N. S. 16), it was held that an order of court directing guardian to deposit assets in bank subject to withdrawal upon order of court was void as being in excess of the court's power.

The powers and duties of guardians as imposed by statute are in their essential nature at variance with the existance of any right in the court to take the custody and management of the estate out of the hands of the guardian and into its own.

The California court points out that,

"It is the guardian, and not the court, who is responsible for the proper administration of the trust."

"He it is to whose custody the property of the ward is intrusted, and to whom the law and the ward alike look for its safe return."

This had been the viewpoint of this court as to administrators in the case of In Re Welch's Estate (1895) 110 Cal. 605, 42 Pac. 1089, where the supreme court on a second appeal said:

"I know of no law which authorizes a Probate Judge to direct an administrator where and how he shall keep the assets of an estate, and surely there ought to be no such law."

The statute under consideration in the DeGreayer case was California Code Section 1892 which provided generally that the court may authorize and require guardians to invest "and make such other orders and give such directions as are needful for the management, investment and disposition of the estate and effects as circumstances require." The decision construing such California statute was necessarily affected by the particular provision of the statute involved and can be safely accepted only upon comparison of such statute with the law of Ohio on the subject. 37 O. Jur. Art. 385, page 691.

It must be noted here that the California court acting upon the authority of a general statute arbitrarily took the

possession and control of assets from the guardian without his assent. No such situation is presented here. Not only did the guardian voluntarily call upon the court to exercise specific authority but such authority was provided for by statute. Here the court simply exercised its discretion when called upon by the guardian so to do.

In Ohio, as to all matters conferred by the Constitution, the jurisdiction of the Probate Court is full and complete. **Section 8, Article IV** of the **Ohio Constitution** gives such court jurisdiction to appoint guardians, settle their accounts and such other jurisdiction as may be provided by law.

In addition, such court has capacity to receive any jurisdiction, within constitutional limits, which the legislature may give it.

**Sec. 10501-53 GC** provides, among other things, that such court shall have jurisdiction to appoint and remove guardians, direct and control their conduct, and settle their account. This statute provides further that

"The probate court shall have plenary power at law and in equity fully to dispose of any matter properly before the court, unless the power is expressly otherwise limited or denied by statute."

A guardian's acts are subject to the control of the court appointing him. He acts as an arm or officer of the court, from which it follows that the office or trust is administered under judicial control, and the guardian may be regulated and controlled in the management and disposition of the property of his ward.

**Sec. 10506-2 GC** provides that the duties of a fiduciary shall be such as are required by law, and such additional duties not inconsistent therewith as the court may order.

In addition to other duties, not germane to this question, §10507-15 GC requires a guardian of the estate to manage the estate for the best interests of his ward and to obey all orders and judgments of the proper courts touching the guardianship.

In other words, the scope of probate powers lodged in this court is measured by the Constitutional and statutory provisions in which they originate and the authority that has been thus expressly or impliedly bestowed. Therefore, where jurisdiction has been conferred over any subject matter, and it becomes necessary in the adjudication thereof to decide

collateral matters over which no jurisdiction has been conferred, the court must, of necessity, decide such collateral issues.

Woerner's Am. Law of Admin., Art. 142. ·

Irrespective of the authority possessed by an executor before appointment, in Ohio the authority of a guardian does not vest until appointment and before appointment a bond must be given. When the court' deems it inexpedient to require full security he is authorized to direct deposit of securities and fix bond for the remainder only under §§10506-23-24-25 which provisions are permissive and discretionary. The court having determined as to the expediency, it follows that the acquiescence of the guardian therein and obedience to the orders of the court relative to the management of the estate for the best interests of the ward should follow as a matter of course.

Under **Section 8, Article IV** of the **Ohio Constitution** the legislature was empowered to and did grant to the Probate Court jurisdiction, and necessarily arising therefrom, ample power and authority, express or implied, under §§10506-23-24-25 GC to direct a fiduciary to deposit securities belonging to an estate in lieu of bond. ' The constitutionality of such sections depend upon their application and effect, judged only through facts of which a court can take judicial notice, and not upon their form. 8 O. Jur. Art. 85, page 186. Said statutes are valid legislative enactments and not in contravention of or repugnant to any provision of the Constitution of Ohio. Being constitutional, the fact that their consequences are objectionable, is to be avoided by a change in the law by legislative and not judicial action.

## LIABILITY OF SURETY.

It is the contention of the corporate surety that the amount of the bond of the guardian is not in double the amount of the liability of the fiduciary and that therefore the court shall allow a reasonable sum paid such a company not above half of one per cent per annum on the amount of the bond.

The fiduciary, on the other hand, contends that the sum so allowed must not exceed a fourth of one per cent. per annum on the amount of the bond.

The principle question to be determined resolves itself into what is meant by the phrase "double the amount of the liability of the fiduciary," as employed in §9572 GC. In the absence of §§10506-23-24-25 GC this question would not be a difficult one to answer.

Ostensibly premium is charged for services in becoming security on bonds and is commensurate with the liability or

risk involved. Where the penal sum of the bond is less than double the liability of fiduciary the proportionate risk to surety is considered greater and hence the legislature has permitted a maximum rate double that where the penal sum is less than double such liability.

### HISTORY OF §9572 GC.

It might not be amiss to review briefly the history of legislation in Ohio dealing with corporate suretyship. The law has run the whole gamut from its prohibition, its requirement to its mere permission. Early legislation viewed corporate sureties with circumspection. Formerly the only method afforded for protection to estates was bonds signed by individuals as sureties, usually as a favor or out of expediency and without comprehension of the responsibility or the hazards involved both to the surety, his family or his estate.

As this country developed and the demand for something more responsible arose, the legislature, while at one time attempting but failing to prohibit personal suretyship, now rather regulates it by imposing more stringent requirements before the court may safely give approval to such bonds in the taking of which the court may become personally liable. In this tightening-up process the legislature, while not requiring it, has extended to fiduciaries the opportunity of substituting the sound experience and financial strength of corporate surety companies, trust companies and banks for the embarrassment and vagaries of personal guarantees.

This legislation is not mandatory in nature but leaves it to the discretion of the fiduciary and the court whether or not under the particular circumstances it will be followed. The impounding statutes of Ohio fall within this type of remedial legislation.

Our first concern is with §9572 GC which was originally 3641c Revised Statutes.

Senate Bill 37 (88 v. 14) passed February 3, 1891 authorized certain corporations to act as sureties on bonds of persons in positions of public or private trust, but contained the significant provision:

"No company organized under this act shall be authorized or permitted to go upon any bond of an executor, administrator or assignee, nor upon the bond of a county treasurer."

The Shyrock Act of 1893 (90 v. 157) amended and supplemented this law but neither this amendment nor the previous enactment made any provision for payment of premium.

In 1896 this law was again amended (92 v. 320) so as to provide for the allowance by the court of a reasonable "sum" paid such surety company by the fiduciary but within certain limits as to amount.

In 1904 (97 v. 182) this law was again amended to provide for allowance of a reasonable "premium" but subject to limitations as they appear in the 1896 law supra. The phrase "liability of such fiduciary" was also changed to "liability of the party principal therein." This law was known as the Craft's law and provided that the execution or guaranteeing as surety of all bonds, except certain bonds not exceeding two thousand dollars, was required to be by surety companies, unless affidavit was filed that the bonding company refused to bond or the surety bond failed to receive approval.

Inasmuch as the amended act of 1904 denied the option of a principal to offer either personal or corporate surety and made the giving of a corporate bond imperative and exclusive the law was declared unconstitutional.

Haunts v Lanman Co. (1904) 2 N. P. n. s. 405, 15 O. D. n. p. 64, **State v Robins** (1905) **71 Oh St 273,** 73 N. E. 470, **State, ex rel v Deckebach** (1922) **105 Oh St 643,** A. G. Opinions No. 113, page 141 (1937), Contra, McKisson v Wright, 15 O. D. n. p. 105.

It might seem at first blush that the part of this enactment declared unconstitutional was capable of separation so as to leave the other parts valid. However, a comparison of both acts with §9572 GC as it now appears in the General Code indicates a vitiation of the entire act.

Accordingly, the repealing section of the 1904 law, having been inserted to secure the unobstructed operation of the act rather than to repeal the former law in any event, such repealing section must fall with the unconstitutionally enacted law. **8 O. Jur. Art. 89 p. 190, 37 O. Jur. Art. 130 p. 392.** We are now relegated to the law as it was enacted in 1896.

Sec. 9572 GC reads as follows:

"Sec. 9572 GC. Allowance of premium.—A judge, court or officer, whose duty it is to pass upon the account of an assignee, trustee, receiver, guardian, executor, administrator or other fiduciary, required by law to give bond as such, whenever any fiduciary has given bond with a surety company as surety thereon, in the settlement of his account as such fiduciary, shall allow a reasonable sum paid such a company authorized under the laws of this state so to do, for becoming his surety, not above half of one per cent per annum on the amount of

the bond; unless it is in double the amount on the liability of the fiduciary, when the sum so allowed must not exceed a fourth of one per cent per annum.———"

It is interesting to note that during the interim between the passage of the act authorizing corporate suretyship (1893) and the time of its amendment so as to establish a premium (1896) Judge O'Neill of the Hamilton Court of Insolvency held in the case of In Re Assignment of Commercial Bank (1896) 3 N. P. 286, that a reasonable and proper cost of a bond should be borne by the parties for whose protection it is required and given; that disinterested third parties need no longer be required to pledge their estates to the end that some other estate shall be preserved intact for distribution, and that whenever an estate comes into a condition so that a bond is by law required to secure its preservation, it should bear the reasonable cost necessary to such preservation estimated on a fair business basis. In the foregoing case bond was fixed at $500,000, about the estimated value of the assets, and a premium of $2,000 was approved. (2/5 of 1%).

### HISTORY OF §§10506-23-24-25 GC.

Finding that with respect to fiduciary bonds, the allowance of premium, within maximum limits, and depending upon their amount with reference to the liability of the fiduciary, is governed by §9572 GC, let us examine §§10506-23-24-25 GC also dealing with fiduciary bonds and liability of fiduciary thereunder.

Since their passage these statutes have been commonly referred to as the "Impounding Law" although the word impound does not appear in the statutes.

While the word "impound" usually refers to the taking up of estrays running at large and placing them in an enclosed space or pound, yet Webster defines impound as "to seize and hold in legal custody", and the word may mean "also to take into the custody of the law or of a court, as when a court sometimes impounds a suspicious document produced at a trial."

Black's Law Dictionary 42 C. J. Sec. 410.

Acceptance and use of this by-name "impound" by the Bench and Bar leads to the belief that the appellation is not merely pseudonymous, but is understood to convey the meaning of restraint as compared to release, of security as against insecurity.

The court has discovered no statutes in any other jurisdiction comparable to the so-called impounding statutes of

Ohio, and none have been cited. Such statutes read as follows.

"Sec. 10506-23 GC. Deposit of securities in lieu of bond.—In any case where a bond is or shall be required by probate court from a fiduciary, and the value of the estate or fund is so great that the probate court deems it inexpedient to require security in the full amount prescribed by law, the said probate court may direct that any certificates of stock, bonds, notes, or other securities belonging to the estate or fund be deposited with a savings bank, national bank or trust company, duly incorporated under the laws of this state, or of the United States, as may be designated by order of the probate court."

"Sec. 10506-24 GC. Bond as to remainder.—After such deposit has been made, and after the filing with the probate court of a receipt for the said securities executed by the said bank, which receipt shall acknowledge that said securities are held by said bank subject to the order of the probate court, the probate court may fix the amount of the bond with respect to the value of the remainder only of the estate or fund."

"Sec. 10506-25 GC. Securities to be deposited subject to order of court.—Such deposit shall be made in the name of the fiduciary, and the certificates, bonds, notes or other securities thus deposited shall not be withdrawn from the custody of such bank or trust company except upon the special order of the probate court; and no fiduciary shall receive or collect the whole or any part of the principal represented by such certificates, bonds, notes or other securities so deposited, without special order of probate court. Such an order can be made in favor of the fiduciary only when the penalty of the bond or bonds theretofore given and then in force will be sufficient in amount to satisfy the provisions of law relating to the penalty thereof, if the property so withdrawn is also reckoned in the estate or fund."

If further proof is needed that the legislature approved of the impounding of assets it may be found in the fact that almost seven years after enactment of §§10506-23-24-25 GC, it enacted §10506-25a GC (117 O. L. 435, Eff. 8-16-37).

While this statute is applicable only to the deposit of works of nature or of art with a corporation conducting a museum or other similar institution, the provision that it have "a net worth of at least ten times the value of the works so to be deposited,—" clearly indicates a legislative intent that, the worth of the institution constitutes sufficient assurance,

and lends meaning to the further provision that after deposit and filing of receipt "the probate court may fix or reduce the amount of the bond so that the amount of the penalty thereof is determined with respect to the value of the remainder only of the estate or fund, without including the value of the property so deposited," as well as making intelligible—the phrase "that provided such fiduciary has acted in good faith," "Neither the fiduciary nor his sureties shall be liable for any loss to the trust estate resulting from such deposit as is authorized and directed by the probate court pursuant to the provisions hereof,—"

The three foregoing sections, §§10506-23-24-25 GC supersede §§10618-1-2-3 GC respectively which were enacted (114 v. 320, 368, effective January 1, 1932).

**Sec. 10506-23 GC** as originally enacted provided that the bank or trust company be "qualified to do a trust business in this state."

In an opinion of the Attorney General (1934 A. G. O. Vol. II, No. 2823, page 867) it was concluded that "a savings or national bank in order to legally receive securities under the provisions of §10506-23 GC, must qualify to do a trust business in this state and must comply with the provisions of §710-150 GC."

The following year §10506-23 GC was amended (116 v. 385, 391, Eff. 9-2-35) by omitting the phrase "and qualified to do a trust business in this state", so that depositaries in order to qualify under this section no longer have to qualify to do a trust business in Ohio.

However the requirements of §710-150 GC (115 v. 470, Eff. 10-4-33) are still effective and in substance provide that no trust company or corporation, doing a trust business, shall accept trusts committed to it by a court until its paid in capital is at least $100,000, and until such corporation has deposited with the Treasurer of State in cash or bonds the sum of $100,000.

Although §§10506-23-24-25 GC were enacted at a different time than §9572 GC and contain no reference to the latter section, these statutes are in para materia. They all relate to the same persons and things or class of persons and things; the scope and aim of their subject matter is connected; they are not inconsistent with one another but have a common purpose and all are to be compared and harmonized, if possible, and construed together as constituting one act, so as to ascertain the legislative intent and give them effect accordingly.

GUARDIAN'S DUTIES AND CONDITIONS OF BOND.

While the functions and duties of all fiduciaries have

points of similarity those of a decedent's are primarily to collect assets, pay debts and make distribution (calling for a short term bond), while those of a guardian are substantially to preserve the assets, accumulate and invest the income and disburse same on termination of the trust (calling for a long term bond).

The requirement of a guardian's bond, its penalty and its conditions are prescribed by statute. So far as is pertinent §10506-4 GC reads as follows:

"**Sec. 10506-4 GC.**  Bond.—Every fiduciary shall prior to the issuance of his letters, file in the probate court in which the letters are to be issued, a bond with penal sum in such amount as may be fixed by the court, but in no event less than double the probable value of the personal estate, and of the annual real estate rentals which will come into his hands as such fiduciary,—

Such bond shall be in such form as the court shall approve, shall be signed by such sureties as are required by law and approved by the court, shall be conditioned that the fiduciary will faithfully and honestly discharge the duties devolving upon him as such fiduciary, and shall be conditioned further as may be provided by law—".

In addition to §10506-4 GC applicable to all fiduciaries, (which term embraces guardians §10506-1 GC), other statutes meticulously prescribe bond conditions for Administrators and Executors (§10506-14-15-16 GC), but until 1941 no further conditions for guardian's bonds were provided by law.

In consequence §10506-20a GC (119 v. 116, Eff. 8-22-41) was enacted providing in substance that guardian's bonds be conditioned (1) to make and return inventory of assets which come to his possession or knowledge, (2) to administer and distribute assets which come to the possession of guardian or to the possession of any other person for him, and (3) to account when required by court or law.

Note particularly that this section requires the filing of a bond before letters can be issued. While a mandatory minimum amount is specified it is based on the value of the estate.

In an opinion of the Attorney General (1945 A. G. O. No. 631) it was decided that notwithstanding the provisions of §710-161 GC (108 v. Pt. I 80-121) an incorporated trust company is required to give bond under §10506-4 GC.

Such requirement, however, should not be confused with the fact that the law requires only that a bond—some bond—must be given, and in many cases only nominal bonds are re-

quired to secure court costs. It casts no inflection on the security or integrity provisions of the law as to banks and trust companies. §10506-23 GC et seq. requires the fixing of bond with respect to the remainder only of the trust after deposit of securities.

The bond in this matter is conditioned as required by law that the guardian inventory all assets of ward "which come to his possession or knowledge"; account when required by court or law; and faithfully and honestly discharge his duties and administer and distribute according to law all assets of ward "which come to the possession of the guardian or to the possession of any other person for him."

"The surety is bound only to the extent stated in the bond, though the law may impose a greater liability on the guardian."

**20 O. Jur. Art. 212, page 376, 12 R. C. L. 1160.**

"A guardian's bond is to be construed with reference to, and read in the light of the law in force when and where it was given, in such manner as to accomplish its purpose, and in the case of ambiguity the circumstances surrounding its execution will be considered."

39 C. J. Sec. Art. 197, page 346.

"The statutes under which a statutory bond is given are considered as entering into it, and conversely it has been held that provisions of a bond exceeding the requirements of the statute under which it is given should be considered as not forming a part of it."

39 C. J. Sec. Art. 197, page 347.

In case of conflict between the language of a fiduciarie's bond and the statute pursuant to which it was given, the statute must prevail.

21 Am. Jur. Art. 179, page 786.

MODUS OPERANDI OF STATUTES.

It has been argued that what the fiduciary has avoided doing under §§10506-23-24 GC (i. e. filing bond with penal sum double the amount of the assets) he must eventually do under §10506-25 GC, before receiving or collecting the deposited assets.

Let us more closely examine the language of these statutes. §10506-23 GC limits the nature of the assets which may be

deposited to certificates of stock, bonds, notes or other securities. Under §10506-24 GC the amount of the bond is fixed only after the deposit has been made and a receipt filed acknowledging that said securities are held by the bank subject to the order of the probate court. The amount of the bond is then fixed with respect to the remainder only of the estate or fund.

Sec. 10506-25 GC then limits withdrawal of such securities from the custody of the bank or trust company except upon the special order of the probate court. No fiduciary shall receive or collect the whole or any part of the principal represented by such securities so deposited, without special order of probate court.

To all intents and purposes the securities are in custodia legis, but it must be carefully noted that receipt or collection by the fiduciary is limited to the "principal" represented by such securities. There is nothing to prevent the fiduciary from receiving or withdrawing stock dividends, interest and like income on bonds, notes and other securities.

That the fiduciary would be in possession and control of such dividends, interest and income and the surety liable on his bond for same may be admitted. The statutes afford ample protection in the fixing and giving of bond to cover such forseeable situations. In the instant case the bond was fixed in excess of double the amount of the remaining assets not impounded for this express purpose. If there were no occasion to require security in the amount fixed then the fixing of an excessive bond and the payment of premium thereon would be unwarranted.

Such statute further provides that such an order of withdrawal from the custody of the depository can be made in favor of the fiduciary, only when the penalty of the bond or bonds theretofore given and then in force will be sufficient in amount to satisfy the provisions of law relating to the penalty thereof, if the property so withdrawn is also reckoned in the estate or fund. Again note that the statute refers only to orders of withdrawal in favor of the "fiduciary". The principal is in the possession and control of the depositary under order of court and remains subject to further order of Court.

It would therefore certainly be anomalous, even with the consent of the fiduciary, for the law to make the court a party to dispossessing the guardian of custody and control and then holding guardian and his surety on their general bond fixed with respect to the value only of other property. We know of no law holding fiduciaries liable for property that without their fault never reached their possession or control.

Sec. 10506-25 GC recognizes that after deposit and receipt such deposited securities are not reckoned in the estate or fund so far as the fixing of bond or the liability of the surety is concerned. The fiduciary and surety are binding themselves for the remainder of such estate or fund, and if such bond is for double the liabiliy of the fiduciary with respect to the assets not deposited, it fully complies with the statute.

The law recognizes that impounded securities are now out of the hands of the fiduciary. The 1945 amendment to §10506-34 GC (121 v. 270; Eff. 9-29-45) dealing with accounts permits the fiduciary to exhibit to the court either,

(1) "the securities shown in said account as being in the hands of the fiduciary,"

(2) "or the certificate of the person in possession of such securities, if held as collateral or pursuant to §10506-23 GC,—"

Even in the absence of impounding statutes and any order of court, a ward's assets in the hands of his guardian are in custodia legis in the sense that they are subject to the orders of the court charged with responsibility therefor.

Ordinarily and in the absence of statute or court order to the contrary, and whether we view him as having merely a bare authority or authority coupled with an interest, a guardian is the custodian, manager and conservator of his ward's property and is entitled by virtue of his office to the possession and control of his ward's estate both real and personal.

However, the legal title to the property of the ward is and remains in the ward rather than in the guardian.

25 Am. Jur. Art. 107, page 69.

Since legal title to the principal on deposit is in the ward and possession and control thereof is in the depositary with ample provision made for fixing of bond as to the remaining assets to enable the guardian to receive and collect the income from the whole estate, no insurmountable difficulty on this score is foreseen.

It can be admitted that in some estates a saving in bond premium might still be achieved if the maximum rate of premium were allowed. That while the rate of premium allowable would be ½ of 1% per annum instead of ¼ of 1% the "amount" of the bond required under these statutes would be less.

Such a saving could occur, however, only in those estates in which more than one-half of the assets would be eligible to be impounded.

Too, in order to warrant the allowance of such a rate under the statutes, the authority therefor would have to be based upon the premise that the surety is liable on the bond for the impounded securities.

Assuming, for the purpose of argument, that the liability of fiduciary is for the whole estate and that on bonds not double the entire assets the bonding company would be entitled to the maximum of $5.00 per thousand on the amount of the bond. Taking for example an estate of $100,000 composed of $95,000 in government bonds and $5,000 in cash. Widow must administer (in excess of $1,000) so deposits the bonds under §10506-23 GC et seq. Court fixes the amount of bond, with respect to the value of the remainder only of the estate or fund, at $10,000. Devastavit as to the whole estate occurs, surety tenders $10,000 in full of the maximum amount of its liability on the bond. Where is the protection or security for the $95,000 if not in the Bank or trust company empowered by the legislature to accept such deposits? With respect to securities deposited under order of Court it would be idle to suppose that the legislature intended to put estates to the expense of paying the maximum rate of premium, or any premium whatsoever, on bonds which furnished no security; whose penalty reckoned such security as being outside the estate or fund; where liability was non-existant and unenforceable, and when risk was already borne and paid for through alternative statutory methods.

On the other hand, suppose that in an estate of great value the securities eligible to deposit are small in value but are nevertheless deposited. Surety bond is then given for double the remaining assets. Could it be said that it was reasonable to suppose that because this bond was not in double the entire value of the estate the larger rate should apply?

The fact that the court has fixed the amount of the bond in accordance with §§10506-4, 10506-23 et seq GC with respect to the value of the remainder only of the estate and that fiduciary has given bond in double the amount so fixed is controlling in the determination of "liability" as employed in §9572 GC. Liability of the fiduciary with respect to the assets upon which the amount of the bond was fixed is the determining factor and if the particular bond is double the amount of such liability the maximum rate applicable thereto must apply. As pointed out supra the liability of the surety is determined by the bond although the liability of the fiduciary may be greater.

The legislature has the power to determine by law the manner in which estates shall be preserved, and to say what

kind of security, if any, shall be required of those who are instrusted with their management.

It also has the power of altering the law on the subject, whenever in its judgment the interests of the wards or the public good requires that it be done. 25 Am. Jur. Art. 47, page 34.

Since it is within the province of the legislature to say what, if any, security shall be given, is it not the purpose of the impounding statutes to dispense with security in the full amount prescribed by law and substitute therefor the financial strength and sound business experience of the bonded bank or trust company, and thereby to extend to fiduciaries the option of choosing between personal sureties, bonding companies or banks and trust companies and to impose liability for the trust property on those responsible for its safekeeping?

In this connection it should be pointed out that the evidence discloses that the bank of deposit makes a reasonable but nevertheless substantial charge for its services rendered as a result of the order of court. The legislature must have contemplated, or should have known, when it enacted the impounding statutes that such expense would be necessary. Therefore it follows that these lawmakers certainly did not intend to create separate liabilities for which the fiduciary might be penalized and for which he would be expected to incur maximum additional expense in arranging for multiple security. Rather, did not the legislature feel that the requirements of §710-150 GC together with other statutory requirements as to qualification afforded ample security for such deposits?

The "liability" of fiduciaries, and consequently the risk assumed by their sureties, depends in each case upon the provisions of law as to the security required to be furnished, the circumstances under which the assets are being held and the degree of care exercised.

The legislature has the power to declare that a trust company or other corporation created by it shall be authorized to qualify and act as guardian without giving bond. In some jurisdictions public officials such as Sheriffs, Administrators and Conservators need not give bond, their official bond serving as their bond as fiduciary. 21 Am. Jur. Art. 717, page 785.

Instances are not wanting of the termination of liability of a surety upon a bona fide transfer of assets by or from a fiduciary to another. Such may result on account of transfers to the fiduciary himself in another capacity, to heirs, by order of court or by operation of law. 21 Am. Jur. Art. 737, page 794.

148

Likewise the failure of a bank in which ward's funds have been deposited does not ordinarily impose liability on the surety. 39 C. J. Sec. Art. 198, page 350. Neither can a prior surety be held liable for a devastavit which occurred after a new bond has been given. **Sec. 10506-11 GC**, Woerner's Am. Law of Admin. (3 Ed.) Art. 255.

The question has arisen as to how to effect redemption of called bonds or make final distribution of the funds without securing additional bond under §10506-25 GC. Literal compliance with this statute would require that if it should be found necessary for the fiduciary himself to receive or collect, the principal or any part thereof then it would be necessary before securing the special order of court for withdrawal from the custody of the bank, for the guardian to have on file or secure bond with penalty sufficient in amount to cover at least double the value of the personal estate and annual real estate rentals not so deposited and the value of the property sought to be withdrawn. In other words in determining the sufficiency of the bond the securities sought to be withdrawn would, in the words of the statute, have to "also be reckoned in the estate or fund."

Such practice, although sometimes so onerous as to make use of the impounding statutes impractical, still serves the purpose and intent of the law by obviating in these estates of such great value that the court deems it inexpedient, the necessity of requiring security in the full amount prescribed by law. Nor can it be said that the necessity must sometime arise for the fiduciary himself to receive or collect the principal. When redemption is necessary an application of fiduciary for special order of the court authorizing the depositary to insure and transmit bonds and, with advice and consent of fiduciary, to re-invest proceeds in statutory approved securities has accomplished its purpose. Distribution, on incompetent's regaining competency or minors arriving at majority, can be accomplished in many instances without fiduciary receiving or collecting the principal. Indorsement by fiduciary, when necessary, furnishing ward with a key to the depository box and the signing of a receipt for the securities often completes the delivery. Should the ward die possessory problems would have to be met by his administrator or executor.

Perchance in accomplishing some of these objectives the fiduciary while in the depository with the depositary may momentarily touch or have in his possession or under his control part or all of such securities, but as in all dealings between human beings, even when urchins "swapped sight-unseen"

their prized jackknives, there comes an instant when some one must let go first. So in business life, the law while endeavoring to require the best possible assurance that trusts will be protected, still recognizes that there is no monopoly on financial soundness, supervisory ability, honesty and fair dealing; affords the constitutionally guaranteed opportunity for more than one kind of security, and requires only exercise of the ordinary care of a prudent man over property of his own.

To say that because a law is difficult to administer, that it does not accomplish its full purpose or does so in an impractical manner and that the remedy lies with the legislature is only heaping execration on those who often were sold on its merits by judges themselves.

Without burdening this opinion further with obiter dictum, suffice it to say that legal title to the securities already being in the ward and possession in the depositary, the impounding stautes impose on fiduciaries, sureties, depositaries and courts alike no greater problems for the exercise of legal ingenuity in effecting safe and convenint transfers than many other statutes appearing in the Probate Code of Ohio and which are in much greater need of revision or repeal.

## CONCLUSIONS.

Concluding, as we have, that as guardian and interested as such in the administration of the trust in this matter, in respect thereto applicant is entitled to have determined certain questions of construction and validity arising under statutes and guardian's bond entered into pursuant thereto; and of obtaining a declaration of his rights and legal relations thereunder and affected thereby, therefore, to remove the uncertainty and terminate the controversy, it is the opinion of the court and it so finds, determines, adjudges, decrees and declares:

(1) In the settlement of applicant's account as guardian in this matter the probate court or judge thereof is now required under §9572 GC to allow a reasonable sum paid the surety company for becoming his surety.

(2) That where any certificates of stocks, bonds, notes, or other securities belonging to the estate or fund have been deposited in compliance with §§10506-23-24-25 GC and all of the provisions of said statutes have been complied with, and the probate court has fixed the amount of the bond with respect to the value of the remainder only of the estate or fund, with penal sum in not less than double the probable value of said remainder only of the personal estate and the annual real estate rentals which will come into the guardian's hands

# 150

as such fiduciary under §10506-4 GC, and such bond has been filed and approved by the probate court, the maximum sum such court or judge thereof shall allow paid a surety company for becoming guardian's surety under §9572 GC must not exceed a fourth of one per cent per annum on the amount of such bond.

(3) Until such time as the court is called upon to settle an account in this matter, the privilege of determining the reasonableness of any sum paid by fiduciary to a surety company for becoming surety on his bond is expressly reserved.

An entry may be drawn in accordance with this opinion.